## McLear *vs* Morgan, Dorsey *et al.*.

APPEAL FROM THE FAYETTE CIRCUIT.

*Trespassers.    Settlement on the wife.    Joint Trespassers.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

ABOUT the 1st of May, 1840, a most grievous assault and battery, was committed by Morgan, Dorsey, McKale and Segar, upon the body of one William Grady, at his own house, after dark, and on the 2d of June following, he commenced a joint action against them, in which he recovered a judgment at the September Term following, against the three former, for $4000 and costs; a *nolle prossequi* having been entered, as to the latter. McKale was insolvent, and Morgan, after the battery, and about the time of the institution of the suit, made a conveyance

of his house and mill, and a tract of land of about nine acres, upon which they were situated, to his son-in-law, Samuel A. Young, at and for the pretended consideration of $3000 paid. Morgan at the time, was, and had for years before, heen greatly embarrassed, and had, as early as 1836, made a fraudulent conveyance of the same tract of land, embracing also about 26½ acres adjoining, to another son-in-law, by the name of Edwards; and had afterwards, on the 19th day of March, 1838, mortgaged the entire tract to one Parker, to secure the payment of a note then executed for $855 35 cents, payable in twelve months, with interest from the date. Executions afterwards were issued against Morgan, and levied upon Morgan's equity of redemption, which was sold, and Parker became the purchaser, at $449 86 cents, on the 10th day of December, 1838. The 26½ acres, that portion of the entire tract which lies on the east side of South Elkhorn, was sold by Morgan to Dorsey, for $60 per acree, and an article of agreement bearing date the 10th January, evidencing the sale executed, in which Parker and Edwards joined. In this article it is stipulated, that $300 is to be paid in hand to Morgan, and the balance to be paid in twelve months, as follows: "It is agreed by all the parties hereto, that said Parker's claim on said mortgage, and for his payments, in *purchasing* the *equity of redemption* of said Morgan, in *said tract*, shall be satisfied out of the last *payment*, and the balance, if any, paid to said Morgan." Edwards had joined in this article, as well as in the conveyances to Parker and Young, by way of passing the pretended title acquired by the prior conveyance from Morgan to him. After the recovery of judgment in damages by Grady, an arrangement was made between his counsel and the counsel of Dorsey, sanctioned by the parties, and by McLear, the complainant, by which Grady's execution was assigned to McLear, and Dorsey, with McLear and Omera as his sureties, assumed to pay Grady and his counsel, $3000 and costs, payable in four, eight and twelve months, and he and his wife executed to McLear and Omera, a mortgage on the tract of land on which he lived, which he had derived through his wife, for their indemnification, and which was

to be sold, and was afterwards sold by him, and the proceeds applied in payment of the amount assumed to be paid to Grady. Dorsey was an Irish emigrant, without property at the time of his marriage. His wife was possessed of a handsome property in lands and slaves. They had no children, and were not likely to have any; and she apprehended in case of her death, that her collateral heirs might come in and oust her husband from the enjoyment of her estate. It was therefore distinctly agreed between them, that her whole estate should be so settled and arranged, that they and each of them should enjoy it during their joint lives, and the survivor during his or her life, and afterwards the one equal moiety of the etate should go and pass to his collateral heirs, and the other to her collateral heirs. In pursuance to this agreement, and on account at the time, of her then indisposition, a deed was prepared and executed by Dorsey and wife, conveying her real estate to Omera, and one executed by Omera re-conveying the estate to Dorsey, the husband; but the execution of the balance of the agreement, which was for the benefit of the wife, and which superinduced and was the moving consideration for the execution of the deed on her part, was suspended at the time, for some cause, not recollected by the witness, but was to be consummated by the express agreement of the parties, at some future time. This had not been done until after Dorsey became involved with Morgan in the assault and battery upon Grady. The intention of her counsel and McLear in the arrangement affected with Grady, was to wield the execution off of the property of Dorsey, which was subject to the agreement made with his wife, and to secure to her as far as might be, the benefit of that agreement, by coercing out of Morgan, a joint trespasser, for her use, whatever might be made on the execution, not exceeding one half of its amount. And this consideration induced her to agree to the arrangement, and join her husband in mortgaging a tract of land which was subject to be settled on her under the unexecuted agreement between her and her husband, parting with even her right of dower in the same, to secure the securities of Dorsey in the assumpsit to Grady.

McLear having the control of the execution of Grady, caused it to be levied on Morgan's equity of redemption in the nine acres of land mortgaged to Parker, and conveyed to Young, and purchased the same for twenty dollars, had the execution returned no property found as to the balance, and filed the bill in this cause, to compel Edwards and Young to surrender their title as fraudulent, and Parker to release his mortgage, and surrender all title to the land, on equitable terms, that the same might be subjected to McLear's execution.   Young answered, denying fraud, and asserting valid title; Morgan answered admitting the fraud charged, and asserting that Young had paid no part of the consideration, except about $124 on an execution which wasin the hands of the officer against him, Morgan, and about $100 in the settlement of an order with Spencer, to whom, by his consent, Young afterwards sold the land; and Spencer had paid him something upwards of $400. Parker answered, asserting absolute right to the land under his mortgage and purchase of the equity of redemption.

The Circuit Court dismissed McLear's bill, and ordered an account to be taken, and the amounts paid ascertained, as well as the amount still due, upon Paarker's mortgage and purchase of the equity of redemption ; and upon the coming in of the report of the auditor, it appearing that only about $194 90 was due to Parker, ordered his bill to be dismissed, so far as he set up claim to absolute title, and decreed Morgan to pay to him the amount reported as due him, and the land to be subjected to its payment, and the deed from Morgan to Edwards to be annuled.   From this decree McLear appealed to this Court, and Parker files cross errors.

Three objections are urged by the counsel of the appellees, against the relief sought by the complainant.

I.  That the judgment of Grady was paid off by Dorsey, and the procceding in the name of McLear, is for his use, and will redound to his benefit, in the nature of a contribution, and equity will not entertain jurisdiction to compel one joint trespasser to make contribution to another.

*Margin notes:*

McLEAR
vs
MORGAN, &c.

The objects of the bill of McLear.

Parker's answer and cross bill.

Objections urged to the decree cree of the Circuit Court.

McLEAR
*vs*
MORGAN, &c.

A judgment is obtained against the husband as one of two joint trespassers, execution levied on the land of the wife, it is agreed that the judgment be, and it is assigned to the husband and two others, and the husband with the consent of the other assignees of the judgment agreeing to settle upon the wife half the lands of the wife, and securing two thirds of the judgment to the assignees —Held that this did not amount to any satisfaction of the judgment as to the other joint trespasser, but it might be enforced by execution against him for the half the entire amount, to the use of the wife of the other joint trespasser to her separate use as agreed on by the assignees of the judgment, and her husband.

II. That Parker by his mortgage and purchase of Morgan's equity of redemption, acquired an absolute and irredeemable title to the land, and it cannot be subjected to the payment of Morgan's liability.

III. The fraud charged has not been sustained against Young.

1st. The judgment and execution in favor of Grady were not in fact paid off by $1000, nor were they intended by the parties to the arrangement, to be satisfied and extinguished; but the whole arrangement was predicated upon the idea, that they were to remain in full force gainst Morgan, as to the one half of the amount, so as to enable McLear, the assignee, to coerce from him the payment of that sum, not as a contribution to Dorsey for money paid, but as the assignee and holder of an unextinguised execution, standing in the place of Grady, and invested with all his rights and powers, to enforce its payment, as to the one half, out of Morgan. The assumpsit of Dorsey, McLear and Omera, was taken by Grady, for the assignment of the execution, and in discharge of any further claim on his part upon it, and the assignment was one of the terms of the assumpsit, was in part the consideration thereof, and formed a prominent inducement to the undertaking, especially on the part of McLear and Omera. The assumpsit might be said in common parlance, to have been taken by Grady, in payment of the execution, but could not have been intended by the very nature of the arrangement, to be an extinguishment of the judgment or execution, which were assigned. If this be the true construction of the arrangement, then this proceeding is not a proceeding for contribution, but a proceeding in equity, in aid of the common law tribunal, in uncovering the fraud charged and subjecting the property of one joint trespasser to the payment of his equal liability to an existing unsatisfied execution in the hands of an assignee, who has the same rights to control it, and the same remedies to enforce its payment as to Morgan, as Grady possessed prior to the arrangement by which the execution was assigned. It was expressly understood, and was clearly the intention of the parties that the judgment and execution were not to be regarded as satisfied

and discharged as to Morgan, but was to remain in full force and virtue as to him, in the hands of the assignee, and a Court of Equity will regard their interests, and carry out and enforce the agreement accordingly, there being nothing in it unconscientious or unjust, or in conflict with any known policy of the law.

But if the proceeding be regarded in the nature of a proceeding to enforce contribution out of one joint trespasser, then there are equitable considerations in favor of Mrs. Dorsey, for whose use the proceeds are intended, which will justify a departure from the strict rule by which the Chancellor is restrained from interposing his authority in favor of one joint trespasser against another, to enforce contribution. Though the unexecuted agreement between her and her husband, might not be successfully opposed against the claims of his creditors, yet it presents a moral and conscientious claim against her husband, sufficient to sustain the arrangement which was made with a view to her interest, and to entitle her to the benefit thereof. Indeed it is questionable whether the failure or refusal of her husband to carry out and consummate the agreement which superinduced the execution of the deeds for her real estate, would not be regarded as a fraud upon her rights, such as would justify the interference of the Chancellor in the annulment of those deeds, in a proceeding against him merely. If so, or whether this be the case or not, as the land out of which she was entitled to a settlement under the arrangement with her husband, was parted with by her, and the proceeds applied in satisfaction of the assumpsit which was the consideration of the assignment to McLear, and was advised by her counsel and accepted by McLear, with a view to her interest and for her use and benefit, and which is sanctioned by Dorsey in his answer, the most ample equitable ground exists in her favor, to have the execution enforced against Morgan as to one half of the amount, and the proceeds applied to her separate use. She is not a joint trespasser, nor is the fund sought to be enforced out of Morgan, a joint and principal trespasser, to pass into the hands of Dorsey, a co-trespasser, thereby encouraging him to commit a similar wrong, which is assigned as the

McLEAR
*vs*
MORGAN, &c.

reason and policy of ·the law in ,refusing its aid in énfor-
cing contribution.   And if by being set apart to the sep-
arate use of his wife, it might afford some slight encour-
agement to him in the commission of a similar offence,
its enforcement and the application of the proceeds to her
use, would operate more powerfully in restraining ·Mor-
gan, the instigator of ·the wrong, from engaging again in
a similar adventure, and the slight inducement held out
to Dorsey, is not such as to induce the Chancellor to
overlook the conscientious and just claims of his· wife,
against both him and Morgan, who were co-trespassers,
or to refuse to entertain McLear's bill for her use and
benefit.

2d. Nor ·can Parker assert absolute title to the land in
or impede the just rights of the complainant in the asser-
tion of the equity which he sets ·up.   Parker purchased
Morgan's equity of redemption in the whole 35 acres,
·subject to his own mortgage, on the 10th December,
1838.   The year for redemption under the statute, con-
sequently expired on the 10th December, 1839.   After
the purchase ·he joined Morgan ·in the article of sale to
Dorsey of about 26½ acres of the land, and stipulated to
receive out ·of the *last payment* which fell due on the 10th
day of January, 1840, a month after the time limited for
·redemption ·would expire, ''his claim on his mortgage,
and for his payments, in *purchasing* the *equity* of *re-
demption* of said Morgan, *in said tract.''*   The agreement
to receive the amount advanced in the purchase of the
equity, *after* the year limited for redemption would ex-
pire, must be deemed a ·waiver of all claim to absolute
title, upon the non-redemption at the time fixed by the
statute.   But he not only agreed and expressly bound
himself to receive payment of the redemption money
upon the whole tract, *after* the time limited by the statute
would expire, but did actually receive $400 before the
time expired, or the money was due upon the contract,
leaving only a small balance due of the whole amount
advanced for the purchase of the equity of redemption of
the whole tract, but also, a few days after the money fell
due upon the article, received $588 20, and afterwards
received the whole amount due him upon the equity, as

*A purchaser of an equity of redemption, agreeing ·to receive from defendant in execution the amount of the price given therefor, at a period more than 12 months from the date of his purchase, and actually receiving part thereof, before and the balance after the twelve months, thereby waives the right of claiming the absolute right un-. der such pur- chase.*

well as on his mortgage, including interest calculated at ten per cent. per annum, for twelve months, upon the amount expended in the purchase of the equity, except a sum under $200, at the time of the decree below. It would seem, therefore, that his acts must be construed to be a waiver of absolute right, and that it would be iniquitous and unjust to give any other construction to them. Can the idea be for a moment indulged, that he has a right to hold the land and money too, or that he could have contemplated such a thing when he received the money?

Besides, a Chancellor never regards *time* as of importance, unless it be of the essence of the contract. And though the small balance due upon the equity of redemption, after deducting the $400 paid in December, was not paid on the precise day that the last payment under the article fell due, yet an amount greatly exceeding that balance, was paid a few days afterwards, and received by Parker without objection or complaint. The payment and reception of the money, therefore, should be regarded as a substantial compliance with the terms of the article and an extinguishment of the balance due on the equity purchased, according to its terms, by way of saving the forfeiture of the right to redeem, which will never be countenanced by the Chancellor, but furnishes a distinct ground for his interference.

*Time is of no importance in sales of land, unless it be of the essence of the contract.—Argu.*

3d. We are also of opinion that the fraud charged in the conveyance of the land in contest to Edwards, and afterwards to Young, has been sustained by the proof. The fraud charged in the conveyance to his son-in-law, Edwards, is not controverted by the counsel of the appellees; and the foot steps of fraud in its devious meanderings, are too plainly marked to escape the scrutiny of the Chancellor, in the conveyance to his other son-in-law, Young.

1st. As to Morgan the fraud is admitted in his answer, and that the conveyance was made to hinder and obstruct Grady in the collection of damages for a most outrageous assault and battery. The conveyance was made after the cause of action had occurred, and a few days before Grady's suit was instituted, and perhaps afterwards, as the

*Circumstances from which fraud is deduced in this case.*

deed was not acknowledged till a few days afterwards; and it is expressly charged in the complainant's bill, and not directly denied in the answer of Young, that the conveyance was made during the pendency of the suit. Morgan was embarrassed and had been for years before, and in 1836, had fraudulently and without consideration, conveyed the same land to Edwards, a son-in-law, and to secure the payment of a debt to Parker, had afterwards mortgaged the same tract to him. It is clear, therefore, that Morgan was capable of conceiving and carrying out a fraudulent purpose, even to hinder and delay contract creditors, much more may it be presumed, would he be tempted to resort to a similar means to escape from the consequences of so grievous a wrong. And who would he more likely appeal to and consult, than his son-in-law Young, who was a resident of, and had commenced the practice of law in Lexington, six or seven miles distant? If his object and motive was to hinder and obstruct Grady, it is hard to believe that Young was not apprised of his intentions.

2d. The consideration, ($3000,) pretended to be paid, as the deed imports, is $1000 more than the estimated value of the land, and more than Young sold it for to Spencer, a tenant of Morgan, a few months afterwards.

3d. Morgan remained in the possession of the land until after the bill was filed.

4th. Young had no use for the property as a residence, it being six or seven miles from Lexington, the place where his business lay as a lawyer, and had no house or home there of his own, and if he possessed means, being governed by the ordinary motives which influence the conduct of rational men, would have laid them out in the purchase of a house and lot there.

5th. Young was without visible property and without means, and had been for years before, and had been and was at the time of the pretended purchase, pressed by unsatisfied executions, for small amounts, which were returned "no property found," and on being pressed by the officers for payment, acknowledged that he had no property nor means, and was unable to pay the executions in their hands, one of them, amounting to only about $18,

which he said he would pay so soon as he became able, and further acknowledged that even the furniture in the house he occupied, which was threatened to be levied on, was not his, but every piece of it belonged to his sister and mother, who lived with him, and had purchased the whole of it. And the Sheriff, who had an execution in his hands against him a short time after the pretended purchase of the land, states that he distinctly understood from Young, that he had no interest in the land in contest.

An attempt, it is true, is made by a single witness on the part of Young, to prove that he saw him in possession of considerable sums of money at different times, before and about the time of the pretended purchase. But this witness appears, by his manner of deposing, to be a willing witness in behalf of Young, and excluding the declarations of Young, which he interlards in his detail, and giving full force to his statements, it is obvious that he did not know or pretend to state the amounts of money Young had in possession, and if he did, his statements are contradicted by the admissions of Young to the officers. It is passing strange after it had become so necessary to establish means to purchase, that not a single other witness was produced, who had ever seen him in possession of those large sums of money, and it is equally strange that no witness is produced showing that his wife had loaned money to Morgan, or that he in fact had ever paid a dollar to him as the consideration for the land, except about $124 paid on an execution against him, and which he said he paid because it bound Morgan's land, stating, at the same time, that he had paid numerous sums to Constables, which is not established by the proof, and an attempt is made in his answer, to make out payment in another form, to-wit—by the exhibition of receipts from Morgan. These receipts were as susceptible of being manufactured to consummate the fraud, as the deed.

An amended bill charges that Young had fraudulently sold the land to Spencer, the tenant of Morgan, and at his instance, after the bill was filed and process served on Young. This allegation is not denied by Spencer or

McLEAR
*vs*
MORGAN, &c.

Young, and no paper evidencing the sale is produced. Without referring to other charges in relation to Spencer's purchase, he must be taken to be a *pen dente lite* purchaser, and as occupying no better condition than Young.

The conveyance to Young being pretended and made to hinder and delay a creditor, is fraudulent and void, and the payment of a small sum by Young, or a larger one by Spencer to Morgan as consideration, cannot make the deed valid or rescue it from the consequences of the fraud.

Upon the whole, we are constrained by the unexplained facts exhibited, to come to the conclusion that the deed was contrived to hinder and delay creditors, and especially to obstruct Grady in his remedy for a most grevious and unprovoked injury.

It is, therefore, the opinion of the Court, that the decree of the Circuit Court be reversed, and cause remanded, that the deeds from Morgan to Edwards and to Young, also the deed of the Sheriff to Parker for the equity of redemption, be set aside and annulled, and the land subjected to sale, or so much thereof as will suffice to satisfy, first, the amount due Parker on his mortgage, as reported by the Auditor, and secondly, to satisfy the execution of McLear, to the extent only of $1,522 47½, the one half of the principal and costs at law paid and secured to be paid by Dorsey, McLear, and Omera, and interest thereon from the 26th September, 1840, and McLear's costs in this Court and in the Court below, and that the amount made by McLear, after the payment of all costs, ordinary and extraordinary, be settled in the hands of a Trustee, for the sole use of Mrs. Dorsey and her heirs, exclusive of her husband.

*Robinson & Johnson* and *Woolley* for appellant: *Morehead & Reed, Harlan & Craddock* and *Robertson* for appellees.