AMERICAN MORTGAGE COMPANY v. WILLIAMS.

Opinion delivered February 5, 1912.

1. JUDGMENT—ENTRY AFTER TERM.—Where a decree was actually rendered in term time, its validity was not affected by the fact that it was not actually entered until after the term, nor by the fact that the entry appears in the record after the order of final adjournment of the term. (Page 492.)

2. MORTGAGES—CONSTRUCTION—INTENT.—The question whether a transaction constituted a mortgage or a conditional sale is to be determined according to the real intent of the parties. (Page 493.)

3.  SAME—TEST.—Where there is an indebtedness or liability between the parties, and a conveyance is intended to secure it, the transaction is a mortgage, whatever the language of the instrument.  (Page 494.)

4.  SAME—FORECLOSURE—REDEMPTION.—Where, in a sale under a mortgage foreclosure, the debt represented by the decree still continues, the foreclosure is opened again to let in the mortgagor's equity of redemption.  (Page 494.)

5.  CONTRACT—FORFEITURE—WAIVER.—Whenever time is made essential to the performance of an agreement, either by the nature of the subject-matter or by express stipulation, the person entitled to insist upon such performance within time may waive his right thereto, either expressly or by conduct consistent only with a purpose to regard the contract as still subsisting, or by acceptance of payment after forfeiture might have been declared.  (Page 495.)

6.  MORTGAGE—RIGHT TO REDEEM—WAIVER OF FORFEITURE.—Where the parties to a mortgage foreclosure agreed in writing that the mortgagor should have a reconveyance within two years upon payment of the debt, and after expiration of such time the mortgagor was permitted to sell part of the property and to make payments, and the mortgagee for nearly a year thereafter acted as if the contract to redeem was still in force, such conduct amounted to a waiver of the right to insist upon a forfeiture.  (Page 495).

7.  AGENCY—INCONSISTENT POSITIONS.—Where an agent intrusted with the sale of property purchases it himself without disclosing to the owner the fact that he is the purchaser, the sale will be cancelled in equity at the owner's instance.  (Page 497.)

8.  SAME—INCONSISTENT POSITIONS.—Where an agent intrusted with the sale of property purchases it for himself, such purchase is voidable only, and where the purchase is fairly made, it being disclosed to the owner that the agent is the purchaser, and the owner agreeing thereto, equity will not cancel it.  (Page 498.)

9.  SAME—RATIFICATION OF AGENT'S ACTS.—Where a principal knew that his agent had bought the principal's property on his own account and failed to object thereto, he will be held to have acquiesced therein and ratified such purchases.  (Page 499.)

10.  SAME—LACHES.—Where a principal knew of his agent buying the principal's lands in his own behalf and waited five years before seeking to hold the agent as trustee, he will be held to be barred by laches.  (Page 499.)

11.  CONTRACT—CONSTRUCTION.—Under a written agreement between the parties to a mortgage of lands, after its foreclosure, providing for a resale of the lands to the mortgagor, provided that the mortgagee should be paid "its debt, interest, cost, taxes, commissions and expenses" in making sale under the contract, the mortgagee was entitled to the expenses of its agent in travelling and conferring with the mortgagee as to the price at which the lands were to be sold,

to the taxes, and to a reasonable amount as commissions on sales, but not to the amount paid by it to its attorney as fees for foreclosing the mortgage previous to the time when the agreement was made. (Page 501.)

12. SAME—CONSTRUCTION.—Where a contract for redemption of mortgaged property after foreclosure provided that the mortgagee should be paid interest, his right did not terminate when the mortgagor asked for an accounting and offered to make payment of any remaining indebtedness, but continued until actual payment or tender of the debt. (Page 502.)

Appeal from Clay Chancery Court, Western District; *Edward D. Robertson*, Chancellor; reversed.

### STATEMENT BY THE COURT.

This is an action instituted by H. H. Williams, seeking to redeem from a sale certain lands which had been sold under a decree foreclosing a mortgage or to have specifically performed a contract reselling to him said lands. The original complaint was filed on July 1, 1905, and was brought against the American Mortgage Company and D. Hopson as defendants. In 1890 the plaintiff executed to said mortgage company his note for indebtedness due to it, and to secure same also executed a mortgage on certain lands in Clay County. This note was due five years after date, with interest. Upon the maturity of said note and default being made in the payment thereof, the mortgage company instituted a suit in the proper court to foreclose said mortgage. Decree of foreclosure was duly rendered therein, and the lands were sold thereunder to said mortgage company. Later these lands were conveyed back to said Williams, who, on March 25, 1896, executed his note to the mortgage company for $6,900, which represented the indebtedness due upon the original notes with interest, and other moneys advanced to him to that date. This note was due five years after date, with interest. On the same day, in order to secure the payment of the said note, he executed a deed of trust or mortgage upon the above and other lands. At the time of executing this last mortgage, a written contract was entered into by the parties whereby said Williams was authorized to sell said lands included in the mortgage, paying all moneys received therefor and turning over all notes given by purchasers for any deferred payments to said Hopson as trustee, who, upon collection thereof, was to

apply same on said note executed to the mortgage company. In that contract it was stipulated that, after payment of the indebtedness due by Williams to the mortgage company, all unpaid notes of said .purchasers and moneys collected thereon should be turned back to the said Williams by the said trustee. In pursuance of that contract, certain lands were sold to various persons and notes taken for deferred payments. On September 20, 1901, the said note executed by said Williams to the mortgage company being past due and unpaid, a suit was instituted in the Clay Chancery Court to foreclose the mortgage on said lands securing same. This suit was returnable at the October term, 1901, of said chancery court. At that term of court it was agreed between the parties that a decree should be rendered in favor of the mortgage company for a recovery in the sum of $11,113.50, the amount then due upon said note, and foreclosing said mortgage. At the same time it was also agreed that the parties would enter into a written contract whereby, amongst other things, it should be provided that, in the event the mortgage company should purchase the lands at the foreclosure sale, it would authorize said Williams to make sales of said lands in its name, and that all payments therefor should be made by the purchasers directly to the mortgage company, and all notes for deferred payments should be made in the name of the said mortgage company, with the option given to the mortgage company to forfeit all the rights and privileges of Williams under the contract in event he failed or refused to comply with the instructions of the mortgage company. It was, however, further agreed that the authority given to Williams to assist in selling said lands did not waive the right of the mortgage company, either by itself or agent, to sell and dispose of any or all of said lands without the aid or consent of said Williams. It was further agreed and provided as follows:

"It is further understood and agreed that if, within two years from the date of the foreclosure sale, the said first party shall receive sufficient cash from the sale of said lands made by the said Williams or itself or other agents to satisfy its debt, interest, cost, taxes, commission and expenses in making such sales, that it will then convey to the said H. H. Williams by quitclaim deed any of the lands that shall not

have been sold or remain undisposed of, and to surrender to the said Williams any unpaid notes given for the purchase money of any of the said lands; but, in case it shall not within such time receive such amount of money, then in that event no such conveyance or surrender of notes shall be made.

"It is further understood and agreed that the only compensation the said Williams shall receive for his efforts made in disposing of said land shall be the above conveyance mentioned and assignment of notes to him in the event the said first party shall receive its money as above stated in full with(in) the said two years."

The written contract was thereafter drafted by either the mortgage company or its attorney, said Hopson, and then submitted to said Williams for his signature, who objected to signing same on account of the short time allowed in which the payment of the indebtedness should be made, but finally he executed it upon the assurance of the mortgage company, by letter, that if at the end of two years good progress had been made in the sale of said lands and the payment of said debt, longer time would be given. The negotiations occupied some time, and the said written contract, though dated in December, 1901, was not actually signed by Williams until some time in February, 1902. The decree of foreclosure was then entered of record by the clerk in vacation, and the lands were sold thereunder to the mortgage company in March, 1902, for $10,000. At the following March term of the Clay Chancery Court, on March 20, 1902, this sale was duly confirmed, and commissioner's deed therefor duly executed to the mortgage company. Under the above written contract, a great number of tracts of land were sold by said Williams from March 20, 1902, until March 20, 1904, Thereafter, during the summer and fall of 1904, said Williams continued to make sales of the said lands in pursuance of the terms of said written contract. It appears also that during the summer and fall of 1904 said mortgage company sold a number of tracts of said land to said Hopson. In December, 1904, said Williams asked for an accounting from the mortgage company, and claimed that he was ready and willing to pay any balance due to it upon said indebtedness from him, and demanded that, upon the satisfaction of such indebtedness, all unsold lands

should be conveyed to him and all uncollected notes of purchasers should be turned over to him. Some correspondence took place between the parties relative to this demand, and finally the mortgage company refused the same, claiming that Williams's right to any reconveyance had terminated on March 20, 1904, inasmuch as the indebtedness to it had not been paid by that date, in accordance with said written contract. For some time a correspondence continued between the parties relative to their respective contentions, and finally in July, 1905, Williams instituted this suit. In his original complaint he asked for an accounting by the mortgage company, and that all moneys received by it from the sales of said lands should be credited upon said indebtedness. While said Hopson was made a party to the original complaint, Williams did not ask that any sales of land made to him should be set aside, or that he have any relief against said Hopson by way of redemption from such sales. On March 3, 1909, he filed an amended complaint, in which he alleged that Hopson had purchased from the mortgage company certain lands with knowledge of the plaintiff's rights therein, at a price below the actual value thereof, and that he had resold same to various persons at an advanced price. In this amended complaint he asked that Hopson be required to make an accounting of the lands bought and sold by him, and that, upon repayment to him of all moneys paid for said lands, the plaintiff be permitted to redeem the unsold lands which had been purchased by said Hopson.

A great mass of testimony was taken relative to these various issues, and upon the hearing of the cause the chancellor found that Williams was entitled to redeem said lands from said mortgage company. He also found that Hopson was the agent of the parties at the time he made purchases of lands sold to him, and, by reason of this relation, such sales to him were voidable. He thereupon appointed a master to make and state an account between the said mortgage company and said Williams, and also of the lands which had been purchased and sold by said Hopson. The master filed a report in which he made a detailed statement of the indebtedness due by Williams to the mortgage company and also of the amounts for which the various tracts of land had been sold since the ren-

dition of the decree in October, 1901. He found therefrom that the mortgage company was indebted to said Williams in the sum of $5,858.91. He also made a report showing the various lands which had been bought by said Hopson, the price paid therefor, and the sales thereof made by him. He found that Williams would be entitled to redeem the remaining lands sold to Hopson upon the payment to him of $3,200.53. Exceptions were filed by all the parties to the master's report. Some of these exceptions were sustained by the chancellor, who, upon final hearing, found that the mortgage company was indebted to Williams in the sum of $1,465.75 and that Williams was entitled to a conveyance from the mortgage company of all unsold lands. He further found that there was due to Hopson upon the lands bought by him under said accounting the sum of $2,538.63 and upon payment thereof that Williams was entitled to all unsold lands bought by said Hopson. Thereupon the chancellor entered a decree in accordance with the finding made by him, from which all of the parties have prosecuted appeals. The mortgage company has appealed from the decree allowing Williams to redeem said lands, and Hopson has appealed from the decree declaring the sales made to him invalid; and both these parties have appealed from the refusal of the chancellor to sustain certain exceptions made by them to the master's report in event Williams is held entitled to redeem said lands from each of them. Williams has appealed from the finding of the court charging him with interest after December, 1904, when he asked for an accounting from the mortgage company and offered to pay any indebtedness then remaining unpaid; and also from the refusal to charge the mortgage company with certain prices on lands sold by it.

*F. G. Taylor* and *Rose, Hemingway, Cantrell & Lough-borough,* for appellants.

1. Williams's right was barred by a failure to pay within two years. The condition was not waived, and the equity of redemption was lost by a failure to redeem within the time. 2 Jones on Mortgages, § 1265; *Ib.* § 1272; Rorer on Jud. Sales, § 1159; 9 B. Mon. 264; 85 Ill. 275; 62 N. E. 484; 58 Ind. 314; 8 Bush 76; 76 N. E. 441; 206 Pa. 407; 55 Atl. 1070;

127 Fed. 914; 95 Pac. 1050; 52 Ark. 65; 93 Ark. 253; 37 Ark. 308.   Upon a sale of lands parties may agree that if the purchase price is not paid by a given time the right to purchase shall be forfeited and the payments treated as rents.   78 Ark. 575; 95 *Id.* 33; 48 *Id.* 415; 61 *Id.* 266; 71 *Id.* 185; 76 *Id.* 578; 78 *Id.* 333.   Clear and convincing proof is required that the owner intended to redeem.   126 N. W. 241.

2.   It was error to refuse to allow appellants credit for expenses.   Trustee's expenses, reasonably and properly incurred in the execution of the trust, are always allowable. 2 Perry on Trusts (4 ed.) §§ 910, 913.

3.   The claim for timber on sections 5 and 6 was erroneously allowed.   131 S. W. 62; 93 Ark. 547, 580.

4.   It was error to render a decree against Hopson for the lands bought by him.   17 Ark. 228; 35 Ark. 483; 46 *Id.* 337; 25 Cyc. 1473, 1476; 25 Cyc. 1479; 59 Ark. 446; 21 Am. & E. Enc. p. 616; 50 Ark. 446.   There was no fraud and no mistake.   A party will not be suffered to adopt inconsistent positions in the course of litigation.   57 Ark. 632; 66 *Id.* 134; 75 *Id.* 41; 94 *Id.* 443.

5.   Estoppel applies.   14 Ark. 505; 18 *Id.* 144; 24 *Id.* 371; 33 *Id.* 465; 48 *Id.* 409.

*G. B. Oliver* and *J. W. & J. W. House, Jr.,* for appellees.

1.   The relation of mortgagor and mortgagee was never changed.   "Once a mortgage, always a mortgage."   47 Ill. 58; 13 Vt. 341; 5 Mich. 231; 113 Pac. 34; 5 Gray (Mass.) 510; 41 Ill. 522; 3 Watts & S. Penn. 384; 54 Mo. 388.   The equity of redemption was not lost nor waived.   Cases *supra.*

2.   The two years' limit can not be enforced.   Parties themselves can not make a contract to limit the time of redemption.   33 Mich. 500; 1 Saxton Ch. (N. J.) 534; 5 McLean (U. S. C. C.) 281.

3.   The company waived its right to insist on a forfeiture by its acts.   46 Ark. 131; 88 *Id.* 369; 1 Murphy (N. C.) 116; 161 U. S. 334; 192 Ill. 82; 31 Mich. 227; 64 N. H. 568.

4.   If a debt is created by a transaction, or an existing debt which entered into the consideration, continues and is kept alive afterwards, it amounts to a mortgage.   109 Mass. 130; 2 Dev. Eq. (N. C.) 154; 65 N. C. 530.   It is not true that

the plaintiff must make a clear case as to his right to redeem. 38 Ark. 207; 13 *Id.* 112; 22 Pick. 526; 64 Pa. St. 325; 6 Watts (Pa.) 405.

5. No error as to sections 5 and 6. 92 Ark. 359. Nor was there error as to Hopson. 59 Conn. 170. He knew all the facts, and was not an innocent purchaser, but an attorney and trustee. Pom. Eq. § § 955 to 959; 9 Page (N. Y.) Ch. 237; 159 Fed. 221; 73 Ark. 575; 123 Am. St. 721.

6. The decree was rendered in vacation and a nullity. 71 Ark. 226; 75 *Id.* 415; 86 *Id.* 591; 89 *Id.* 85; 42 Vt. 356.

FRAUENTHAL, J., (after stating the facts.) 1. It is contended by counsel for plaintiff that he is entitled to redeem the lands from the mortgage company on payment of the amount due to it named in the alleged decree of October, 1901, because (1) the decree was not rendered by the court in term time but was only conditionally agreed to and thereafter entered in vacation; and (2) because, if the decree was regularly rendered, the entire transaction represented by it and the sale thereunder and the written contract providing that plaintiff might still repay the indebtedness, was in effect but a mortgage. On the other hand, counsel for the mortgage company insist that the decree was regularly rendered during the October term of the chancery court foreclosing the mortgage and all equity of redemption of plaintiff therein; that by the purchase of the lands under said decree the mortgage company acquired an absolute title to the lands; and that by said written contract, at the most, only a conditional sale was made to plaintiff of these lands, wherein time was of the essence of the contract, and, the payment not having been made within the time therein nominated, such sale became ineffective.

We do not think that there is any merit in plaintiff's contention that the decree of October, 1901, was rendered in vacation. The evidence clearly shows that the suit was instituted not only against Williams for the foreclosure of said mortgage, but the persons who had purchased lands after the execution of said mortgage were also made parties to said suit in order to adjudge their rights and liabilities. The deposition of Williams was taken in the case relative to those matters and during said October term of said chancery court the cause was submitted to the court and the various matters involved in a

final adjudication of the rights of all parties to that suit were presented to the chancellor and determined by him. Thereupon a decree in accordance with that determination was rendered by the chancery court. The decree was not actually drafted at that time; but this was subsequently done, and the draft thereof presented to counsel for Williams, who found it in accordance with the decree which had been rendered by the chancellor. The actual entry of this decree was postponed, awaiting the execution of the above written contract. The attorney for the mortgage company testified positively that the chancellor did in term time render the decree, and Williams himself admitted that he understood that such decree was rendered. The mere fact that the decree was not actually entered by the clerk in the record until in February 1902, and beyond the term did not affect its validity; nor is the fact that the decree appears entered in the record after the order of final adjournment of that term of court sufficient to impeach its verity. *Williams* v. *Ritchie*, 77 Ark. 304; *Fiddyment* v. *Bateman*, 97 Ark. 76.

In order to determine whether the various transactions culminating in said decree and written contract of resale constituted a mortgage or a conditional sale, it is necessary to arrive at the real intent of the parties, because the effect of the transaction must be judged according to that intention. If it was the intention of the parties that the indebtedness from Williams to the mortgage company as represented by the notes merged into the decree should subsist and continue after the foreclosure of the mortgage, then the decree rendered and the sale thereunder would not bar the equity of redemption. In such event the sale and foreclosure would be no more than a mere mode of conveying the land in order to secure the continuing indebtedness. The form of the transaction would not change its real effect, as shown by the actual intent of the parties. On the other hand, if it was the intent of the parties by this decree and sale thereunder to extinguish the debt of Williams to the amount of the purchase price paid for the lands and thereby to pass to the mortgage company an absolute title to the land, then the contract for the resale thereof, even at the same price as the amount of the indebtedness, would not constitute the transaction a mortgage. The rule for deter-

mining whether a transaction is a mortgage or conditional sale, no matter what its form may be, is thus stated in 3 Pomeroy's Eq. Juris., 1195, which is quoted with approval by this court in the case of *Hays* v. *Emerson*, 75 Ark. 551; "The criterion is the continued existence of a debt or a liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or a liability between the parties, either a debt existing prior to the conveyance or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of the existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations they may have inserted in the instrument. On the contrary, if no such relation whatever of debtor and creditor is left subsisting, then the transaction is not a mortgage but a mere sale and contract of repurchase." And we think the same rule applies to a transaction wherein there may be a decree of foreclosure and sale thereunder if from such transactions it appear that the debt represented by the decree still continues. In such event, the foreclosure is in fact opened again and lets in the equity of redemption of the mortgagor. *Clark* v. *Robinson*, 15 R. I. 231; *Smalley* v. *Hickok*, 12 Vt. 153; *McLear* v. *Morgan*, 5 B. Mon. 282.

But, in the view we have taken of the case, we do not deem it necessary to determine whether or not the testimony relating to the manner in which the decree was agreed upon and the sale thereunder made in connection with the written contract, in effect a resale of the lands to Williams, shows that it was the intention of the parties to constitute this transaction a mortgage or a conditional sale, because, if the transaction culminated in a contract of conditional sale, with time of payment as the essence thereof, we are of the opinion, from the evidence, that the mortgage company by its acts and conduct waived its right to insist on a forfeiture upon the failure to receive payment of its debt within the stipulated time of

two years from the date of such foreclosure sale. The doctrine has been well settled in equity that the breach of an agreement sufficient to cause a forfeiture may be waived by the other party by his acts and conduct, or may be acquiesced in by him so that he will be precluded from enforcing the forfeiture. Mr. Pomeroy in his work on Specific Performance of Contracts, § 394, says: "Whenever time is made essential, either by the nature of the subject-matter and object of the agreement or by express stipulation or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists—that is, the one who is entitled to insist upon punctual performance by the other or else that the agreement be ended—may waive his right to the benefit of any objection which he might raise to the performance after the prescribed time, either expressly or by his conduct; and his conduct will operate as a waiver when it is consistent only with the purpose on his part to regard the contract as still subsisting and not ended by the other party's default." This court has approved this principle from almost its earliest history, and has steadily adhered to it. *Atkins* v. *Rison,* 25 Ark. 38; *Banks* v. *Bowman,* 83 Ark. 524; *Braddock* v. *England,* 87 Ark. 393; *Turpin* v. *Beach,* 88 Ark. 604; *Friar* v. *Baldridge,* 91 Ark. 133; *Three States Lumber Co.* v. *Bowen,* 95 Ark. 529.

In the case of *Three States Lumber Co.* v. *Bowen, supra,* this court said: "In cases where the parties by contract made time of payment to be of the essence of the contract, the right to insist on a forfeiture by failing to pay within the time may be waived by conduct on the part of him who has the right to insist on a forfeiture." It has always been held by this court, as will be seen from the above cases, that such waiver may be evidenced by the acceptance of payment by the party entitled to insist upon forfeiture after the date when such forfeiture could be declared.

The testimony in the case at bars shows that, pending the agreement between the parties to the foreclosure decree, it was also agreed that a written contract would be entered into whereby Williams would be entitled in effect to the reconveyance of the land to him upon payment of a price represented by Williams's debt within a specified time. The mortgage company suggested that the time should be two years,

and Williams was insisting on a longer time. Finally, the written contract was drafted so as to name the time at two years, but, before the contract was finally executed by Williams, the mortgage company wrote him that if at the end of said two years good progress had been made in the sale of the lands, and thus in effect making payments on the indebtedness, then there would be no difficulty about its further extending the time. Relying upon this assurance, the contract was signed by Williams in which it was stipulated that the price should be paid within two years from the date of the foreclosure sale which expired on March 20, 1904. Up to that date a great number of tracts of land had been sold, aggregating several thousand dollars, but still amounting to much less than the debt or contract price of the lands. But no forfeiture was then declared by the mortgage company. On the contrary, it permitted Williams to continue making sales of said lands and approved same, collecting thereafter from time to time the payments thus made thereon. After March 20, 1904, Williams made sales of the lands to a number of persons, aggregating $4,732. These sales were made during various months and up to December, 1904. During all this time, Williams was receiving no compensation for his time and services in making these sales except in reliance on the agreement contained in the written contract that the unsold lands would be reconveyed to him when the mortgage company received full payment of its debt from such sales. In December, 1904, Williams wrote to the mortgage company for an accounting, thus showing that he was led to believe by the conduct of the mortgage company that the contract was still subsisting. The mortgage company replied to this letter, but did not say that the contract had been or was then forfeited. Later, in December, 1904, Williams again wrote to the mortgage company insisting on his claim for an accounting and a reconveyance of the land upon satisfaction of the debt to the mortgage company. In January, 1905, the mortgage company answered this letter, and therein it did not claim that it had declared a forfeiture of said contract, or that the right claimed by Williams thereunder was then or had been forfeited. On the contrary, it wrote him that it was giving his letter consideration and was looking into the matter to determine "whether his request

could be obtained." Not until February 14, 1905, did the mortgage company claim definitely that the contract had been forfeited and refuse to recognize his claims thereunder. In the meantime, it had recognized the acts of Williams in making the sales of the lands under the written contract after March 20, 1904, knowing that he was receiving no compensation for his time and services except in reliance upon the contract being still in force. It accepted payments without declaring a forfeiture, and for almost one year after the date when a forfeiture could have been declared both parties acted as if the contract was still in force. By this conduct and action, we are of the opinion that the mortgage company is precluded from insisting on any forfeiture of said written contract. Williams is, therefore, entitled to a conveyance of all the unsold lands and of a transfer of all uncollected notes if the indebtedness due by him to the mortgage company has been fully paid, whether his right be founded upon redemption of a mortgage or upon a contract for such conveyance and transfer.

2. It is contended by counsel for plaintiff that the defendant Hopson occupied a relation of trust with reference to him in the sale of the lands, and therefore could not derive any benefit to himself by the purchase thereof. The principle, we think, is well settled that a trustee or one who occupies a relation of confidence in the management or sale of property can not deal with it in any manner for his own benefit. This doctrine applies to the relation of principal and agent with reference to property which is the subject of the agency. It is uniformly held that "no one can be permitted to purchase an interest where he has a duty to perform that is inconsistent with the character of a purchaser." Where an agent who is intrusted with the sale of property purchases it himself without disclosing the fact that he is the purchaser to the owner, the sale will be cancelled in a court of equity at the instance of such owner. *Boysen* v. *Robertson*, 70 Ark. 56; *Thweatt* v. *Freeman*, 73 Ark. 576; *Bank of Pine Bluff* v. *Levi*, 90 Ark. 166. But such purchases are not absolutely void; they are only voidable. If the transaction is made in perfect fairness, and if disclosure is made to the owner that the agent is the purchaser, and with such knowledge the owner agrees to or ratifies such sale, then equity will not avoid and cancel same. Under

such circumstances, the agent is not precluded from buying property placed in his hands for sale. In the case at bar it was provided by the written contract that the lands should be sold by the mortgage company with or without the aid and consent of said Williams. Hopson represented the mortgage company in effecting such sales. Under said written contract, however, the sales were to be made for the benefit of both the mortgage company and of Williams, and by such agency Hopson therefore occupied also a relation of trust and confidence for Williams thereto. We are of opinion, therefore, that any purchases made by him were voidable at the instance of the plaintiff unless they were known to or ratified by him, or unless he delayed for an unreasonable time to avoid them.

Upon an examination of the testimony, we are of opinion that at the time Hopson made purchases of the various tracts of land in 1904, the clear preponderance of the evidence shows that he either told Williams thereof or that Williams obtained knowledge thereof; and therefore either agreed to these purchases expressly or ratified them by failing to object thereto. The mortgage company and Williams had agreed upon the price at which these tracts should be sold, and none of the tracts bought by Hobson was purchased at a less price. Hopson made purchases in the fall of 1904 of the greater number of tracts bought by him, which was prior to the institution of this suit. In the fall of 1907 he purchased a few more tracts. In 1905 Williams instituted this suit, and in his original complaint he asked that he be given credit for all the lands sold prior to that date, which necessarily included the lands theretofore sold to Hopson. He made Hopson a party to the suit at the time of its institution, and the only interest which Hopson could have had in the litigation grew out of the fact that he had made these purchases, and he could not have been made a party to the action for any other reason. In the original complaint Williams did not ask that the sales made to Hopson be set aside, but, as above stated, asked for a credit for all sales made; and therefore, in effect, for an affirmance of such sales. Hopson testified in the case in 1906, and gave a full statement of every tract bought by him before that time and the price paid therefor. At that time neither Williams nor his counsel raised any objection to such purchases made by

Hopson.   In 1907 Hopson then bought the remaining tracts purchased by him.   In March, 1909, Williams, for the first time, made objection to the purchases by Hopson.   He then filed an amended complaint, asking that the sales to Hopson be set aside.   Prior to that, Hopson had sold a great number of the tracts bought by him to third persons.   We think that the clear preponderance of the evidence shows that Williams had knowledge of these purchases made by Hopson, or of facts putting him upon notice thereof, before the institution of this suit.   He fixed the prices upon all the lands, and was himself actively engaged in making sales of all of them, including those bought by Hopson, and from the facts and circumstances adduced in evidence must have known, or had knowledge of facts to put him on notice, of the purchases made by Hopson.   By his failure to then object to such purchases, he acquiesced therein and thereby ratified them.   We are also of the opinion that by long and continued delay in making objection to the sales to Hopson, after knowledge thereof, Williams is barred from now asking that such sales be set aside.   In the case of *Gibson* v. *Herriot,* 55 Ark. 85, this court said:   "Courts of equity have always discouraged laches and delay.   The door of equity can not forever remain open."   In the case of *Stuckey* v. *Lockard,* 87 Ark. 232, it was held that where an administratrix purchased at her own sale, such purchase is voidable merely; and where the heirs, knowing the facts, permitted her to go in possession under the sale and waited four years before seeking to enforce the trust, they will be held to be barred by laches.   In that case it was said that the controlling principle is thus stated:   "It follows that interested persons are not confined to the remedy of avoiding the sale, but have the right to elect whether they will have the sale set aside or ratified and hold the representative as trustee for the value or price.   The right to have the sale set aside must be exercised within a reasonable time after the irregular purchase has become known to the persons seeking its avoidance, as acquiescence in a sale for a long time will create a presumption of ratification."   And it was there held also that in such cases delay for a much less period than that fixed by the statute of limitation will preclude the right to bring suit to avoid such sales.   It was there declared that a delay of four years to impress with a

trust the purchase of land made by a trustee was unreasonable. See also *Hammond* v. *Hopkins*, 143 U. S. 224; *Cook* v. *Martin*, 75 Ark. 40; *Fagan* v. *Stuttgart Normal School*, 91 Ark. 141; *Davis* v. *Harrell*, 101 Ark. 230. While we are of the opinion, from the facts and circumstances adduced in evidence, from the activity of Williams himself in making sales of these very lands at the time Hopson purchased them in 1904, Williams must have known then of his purchases, or of facts putting him on notice thereof, the undisputed evidence shows that in 1906 Hopson gave him a full statement of every tract then purchased by him and the price paid therefor. Williams did not then object to such purchases, but, having theretofore filed his suit in which Hopson was made a party and in which he had asked for a credit for the sale of all lands made, it is only reasonable to presume that he still insisted in 1906 upon this relief which was asked for in his complaint. Influenced by this conduct on the part of Williams, Hopson purchased some other tracts in 1907. Williams then delayed until 1909 before making any objection to any of these sales made to Hopson. In the meanwhile Hopson had sold a great number of the tracts bought by him to third persons, and the other tracts had enhanced in value. This, we think, under the facts and circumstances of this case, was an unreasonable time for plaintiff to have delayed in objecting to such sales, and we are of the opinion that he is not now entitled in equity and good conscience to have those sales avoided and annulled.

In regard to the lands in sections 5 and 6, we are of the opinion that the undisputed evidence shows that they were sold to one John Jones in January, 1903, and that shortly thereafter Hopson told Williams of this sale and the price for which the land was sold, and that Williams raised no objection thereto, but indicated that he was satisfied therewith. We are also of the opinion that the undisputed testimony shows that at the time of such sale Hopson had no interest, directly or indirectly, present or prospective, in the sale made to Jones. Hopson testified positively to this, and there is no testimony to the contrary. It is true that Jones was a relative of Hopson, and that after his purchase he sold to Hopson an undivided half interest in these lands; but in explanation of this Hopson testified that after his purchase Jones became dissatisfied

therewith because the lands were flat and wet, and that Hopson then agreed to relieve him partly of what he deemed a bad bargain by taking and paying for an half interest therein. The circumstances we do not think are such as to throw discredit upon the testimony of Hopson. The lands were sold at the price which was fixed by Williams himself; they were purchased openly; all other purchases made by Hopson were made openly; and we can discover no fact or circumstance in the evidence to stamp the testimony of Hopson as untrue. We have examined the entire testimony relative to these sales made by Hopson carefully, and it would serve no useful purpose to set this out in detail or to discuss it. We deem it only necessary to announce the conclusion at which we have thus arrived from this examination.

We are of the opinion, therefore, that the court erred in entering a decree cancelling the sales of the lands made to Hopson, and in ordering that an accounting should be made relative thereto. We are also of the opinion that the court erred in charging the mortgage company with a larger sum than that for which the lands in sections 5 and 6 were actually sold to said Jones.

3. Under the written contract, providing in effect for a resale of the lands to Williams, it was agreed that the mortgage company should be paid "its debt, interest, cost, taxes, commissions and expenses in making such sales." That was the price which was to be paid for the lands by Williams under this contract of resale, and the amount thereof must therefore be determined alone by the written contract. The mortgage company, was, therefore, entitled to receive all sums which are covered by the above items of the price and no other. The expenses of the general agent of the mortgage company, Mr. Young, in going to Arkansas and conferring with Williams and Hopson in fixing the price at which the lands were to be sold were a part of the expenses of making the sales thereof, and should therefore have been allowed as a credit to the mortgage company. Likewise the mortgage company should be allowed the taxes paid upon the land for the year of 1901, amounting to $37.23, for the reason that this was a necessary expense to clear the title of the lands for sale as well as a part of its debt. We do not think that the amount paid by the

mortgage company to its attorney for his fees in foreclosing the mortgage in 1901 is covered by any of the above stipulated items of the price named in said written contract. It was not a part of the costs, for the costs, we think, refer alone to the legal costs of the suit; it was not a part of the debt nor of the expenses in making the future sales. If it was the intention of the parties that Williams should also pay this sum as a part of the price for the lands, then it should have been specifically mentioned in the contract. We can not by implication add such a term to a written contract which does not appear therein. By the terms of the written contract, Williams was to pay commissions in making the sales of the lands, but no definite amount was therein named. The mortgage company was therefore only entitled to pay and to charge against Williams a reasonable amount for such commissions. The chancellor found from the testimony that 5 per cent. was a reasonable and customary charge for such commissions, and upon an examination thereof we can not say that this finding is contrary to the weight of the evidence. The chancellor, therefore, did not err in refusing to allow any commissions in excess of 5 per cent. The mortgage company, however, is entitled to a credit of 5 per cent. for such commissions upon the sales of all lands made by the defendants themselves and not through the agency of plaintiff, Williams.

It is claimed by counsel for plaintiff that the mortgage company was not entitled to any interest upon its debt after December, 1904, when he asked for an accounting and offered to make payment of any remaining indebtedness. But we are of opinion that the mortgage company was entitled to interest on its debt according to the contract rate until by the sales of the lands full payment had been made to it. The interest would not cease until there was an actual payment or actual tender of payment of its debt, which was not made.

It follows that, while in some regards the decree of the chancellor is correct, in other particulars it is erroneous. All portions of said decree in which error is specifically noted above in this opinion are reversed, and in all other respects the decree is affirmed. The cause will be remanded with directions to dismiss the complaint as to the defendant Hopson

and to restate the account between the defendant, the mortgage company, and Williams in accordance with this opinion.