MOFFATT v. WYMAN.

5-109                                      258 S. W. 2d 533

Opinion delivered June 1, 1953.

Rehearing denied June 29, 1953.

*A. James Linder,* for appellant.

*Etheridge & Sawyer,* for appellee.

MINOR W. MILLWEE, Justice. This suit was instituted by appellees, L. A. Wyman and wife, against the appellant, E. W. Moffatt, to have a warranty deed and contract to repurchase declared to be a mortgage and to permit a redemption therefrom. The parties were formerly neighbors residing in the Milo community in

Ashley County. In 1950 appellees' 40-acre homestead was about to be sold in satisfaction of a foreclosure judgment in favor of R. L. Craig. Appellees sought a loan from appellant to pay off the foreclosure judgment after the appellant had volunteered to assist appellees in saving their homestead.

After considerable negotiations between the parties the appellees on March 28, 1950, executed a warranty deed conveying the land to appellant. On the same date Appellee L. A. Wyman and the appellant entered into a written contract in which the appellant agreed to sell the land to Wyman on or before December 1, 1950, for $1,615 with the right of possession retained by Wyman until said date. It was also provided that time was the essence of the contract; that Wyman must exercise the right to repurchase on or before December 1, 1950; and that appellant should insure the improvements on the land at the expense of Wyman and that any payment for losses under the policy should be credited on the payment of the repurchase price.

Appellees had not paid the repurchase price on December 1, 1950. There is a decided conflict in the evidence as to whether the parties, on or before said date, agreed to an extension of time of payment of the repurchase price and also as to whether appellees offered and the appellant refused payment within the extended time. The evidence on behalf of appellees was to the effect that the parties entered into an oral agreement to extend the option to repurchase by payment to appellant of $10 per week and that appellant refused to accept payment of the repurchase price within the extended period and insisted upon a forfeiture of the option to repurchase.

Appellant testified that no such extension agreement was made and that the nine weekly payments admittedly made by appellees represented payments as rent and were so acknowledged by appellees. A combination home and store building on the lands was destroyed by fire in May, 1951, and the appellant collected $1,000 upon an insurance policy which he had procured under the contract.

The chancellor held that the evidence sufficiently established a parol extension of the time for payment of the repurchase price under the contract and a waiver by the appellant of his right to insist upon a forfeiture for non-payment on or before December 1, 1950. A decree was entered directing specific performance of the contract to repurchase upon payment by appellees of $629.21 which the court found due the appellant after all credits including the $1,000 insurance payment. Appellees paid the amount fixed into the registry of the court and this appeal followed.

It should be noted that while appellees based their right to relief upon the theory that the warranty deed and repurchase contract constituted a mortgage, the chancellor treated the suit as one for specific performance of the contract to repurchase. The court's finding as to the amount required to redeem the land is fully sustained by the evidence whether the suit is treated as one to redeem from a mortgage or one for the specific performance of the repurchase agreement. The chancellor concluded that even if the transaction was not intended as a mortgage, the appellant, by entering into the extension agreement and accepting weekly payments thereunder after some of such payments were delinquent, waived his right to insist on a forfeiture upon the failure of appellees to pay the repurchase price by December 1, 1950.

We have held in many cases, including those where the parties have by contract provided that time of payment shall be of the essence of the contract, that the right to insist on a forfeiture by failing to pay within the time may be waived by express agreement or the acts and conduct of the party who has the right to insist on the forfeiture. In *American Mortgage Co.* v. *Williams,* 103 Ark. 484, 145 S. W. 234, the court said: "The doctrine has been well settled in equity that the breach of an agreement sufficient to cause a forfeiture may be waived by the other party by his acts and conduct, or may be acquiesced in by him so that he will be precluded from enforcing the forfeiture. Mr. Pomeroy

in his work on Specific Performance of Contracts, §
394, says: 'Whenever time is made essential, either by
the nature of the subject-matter and object of the agree-
ment or by express stipulation or by a subsequent notice
given by one of the parties to the other, the party in
whose favor this quality exists—that is, the one who
is entitled to insist upon punctual performance by the
other or else that the agreement be ended—may waive
his right to the benefit of any objection which he might
raise to the performance after the prescribed time,
either expressly or by his conduct; and his conduct will
operate as a waiver when it is consistent only with the
purpose on his part to regard the contract as still sub-
sisting and not ended by the other party's default.' This
court has approved this principle from almost its earliest
history, and has steadily adhered to it. *Atkins* v. *Rison,*
25 Ark. 138; *Banks* v. *Bowman,* 83 Ark. 524, 104 S. W.
209; *Braddock* v. *England,* 87 Ark. 393, 112 S. W. 883;
*Turpin* v. *Beach,* 88 Ark. 604, 115 S. W. 404; *Friar* v.
*Baldridge,* 91 Ark. 133, 120 S. W. 989; *Three States Lum-
ber Co.* v. *Bowen,* 95 Ark. 529, 129 S. W. 799.''

In *Friar* v. *Baldridge, supra,* the court said: ''Par-
ties may enter into a valid contract relative to the sale
of land whereby they may provide that time of payment
shall be of the essence of the contract, so that the failure
to promptly pay will work a forfeiture. *Ish* v. *Morgan,*
48 Ark. 413, 3 S. W. 440; *Quertermous* v. *Hatfield,* 54
Ark. 16, 14 S. W. 1096; *Block* v. *Smith,* 61 Ark. 266,
32 S. W. 1070. But the final effect of such an agree-
ment will depend on the actual intention of the parties,
as evinced by their acts and conduct; and such a
breach of the contract as would work a forfeiture may
be waived or acquiesced in. The law will strictly en-
force the agreement of the parties as they have made it;
but, in order to find out the scope and true effect of
such agreement, it will not only look into the written
contract which is the evidence of their agreement, but it
will also look into their acts and conduct in the carry-
ing out of the agreement, in order to fully determine
their true intent. It is a well-settled principle that equity
abhors a forfeiture, and that it will relieve against a

forfeiture when the same has either expressly or by conduct been waived."

As previously indicated, there is a sharp dispute in the evidence on the issue of waiver as well as the question of whether the parties entered into an agreement to extend the time of payment under the repurchase contract. It would serve no useful purpose to detail this conflicting testimony. After hearing and observing the witnesses the chancellor made exhaustive findings in which he determined that the evidence preponderated in appellees' favor on both issues. After careful consideration of the testimony we are unable to say that the chancellor's findings are erroneous.

Affirmed.