BERRY *v.* CRAWFORD.

5-3104 373 S. W. 2d 129

Opinion delivered December 16, 1963.

*Hall, Purcell & Boswell,* for appellant.

*Fred E. Briner,* for appellee.

ED. F. McFADDIN, Associate Justice. From a decree awarding the appellee specific performance, the appellant brings this appeal: On May 31, 1961, appellant Berry and wife[1] entered into a written contract with appellee Crawford,[1] by the terms of which Berry agreed to sell and Crawford agreed to buy a certain lot in Saline County; and Crawford agreed to make a payment of $1,000.00 and interest on May 31, 1962. Other pertinent provisions of the contract will be later mentioned.

On July 24, 1962, Berry filed the present suit, alleging that Crawford had failed to make the required payment when due, and prayed that all rights of Crawford under the said contract be declared forfeited. By way of answer and cross complaint, Crawford alleged that he was and had been at all times ready, able, and willing to

---

[1] Mr. Berry's wife was a party to the contract (evidently having dower interest), and is a party to the litigation. Mr. Crawford was doing business as "Crawford Realty Company" and is so styled in the pleadings; but for brevity and clarity we refer to the parties in the singular simply as "Berry" and "Crawford."

make the required payment, and had so notified Berry; and that Crawford was entitled to specific performance of the contract. The cause was heard *ore tenus* in the Chancery Court and resulted in a decree awarding Crawford specific performance. From that decree Berry brings this appeal, and urges these points.

"I. The Court erred in its construction of the contract in question.

"A. The Court should not have ignored the express stipulation in the contract that time was of the essence.

"B. The Court erred in not treating the contract in question as an option to purchase.

"C. Appellee was not entitled to the remedy of specific performance."

The instrument involved was entitled "Contract," with Berry as the seller and Crawford as the buyer. It was not merely an option contract, but a definite contract wherein one party agreed to buy and the other party agreed to sell. The contract stated: "The buyer agrees to pay to the seller for said lands the sum of One Thousand and 00/100 Dollars," etc.; and, "The seller agrees that when all of the above mentioned purchase price has been fully paid with interest . . . to execute and deliver to the buyer a deed for the said land . . ." The contract was a printed form prepared for use in installment payments, providing for interest on each installment "at the rate of five per cent per annum from date until maturity and interest at the rate of ten per cent per annum from maturity until paid, . . ." The 5% had been scratched out and 6% had been substituted, but no change had been made in the language that the amount bore interest at 10% from maturity until paid. The contract also had this pertinent provision: "It is agreed that if the buyer should fail or refuse to pay any one of said installments when due as above stated, . . . or fail to comply with any provision of this contract, then the seller shall have the right and option to declare all installments immediately due and payable and

*if payment in full is not made on demand*[2] then all obligations on the part of the seller shall cease and the buyer shall lose all rights under this contract . . . and it is distinctly understood and agreed *that time is of the essence of this contract*[2] and the moving consideration for its execution by the seller."

Crawford did not tender his check for the $1,000.00 and interest to Berry until June 13, 1962, which was fourteen days after the due date of May 31, 1962. Berry refused to accept the payment and filed this suit on July 24, 1962 asking the Court to declare all rights of Crawford to be forfeited. At the trial Crawford testified: that about thirty days before May 31, 1962, he met Berry in the post office at Benton and told Berry that he (Crawford) did not remember exactly the due date of the contract; that Berry replied, "I think it is in thirty days or something like that . . . "; that Crawford told Berry, "Get your papers together when you get ready for your money and come by . . ."; and that Berry made no objection to such remark. Berry did not take the stand in rebuttal to deny the aforesaid conversation. Crawford learned on June 12, 1962 that Berry was claiming a forfeiture and promptly sent Berry a check, which was returned with the statement that Crawford's rights under the contract had been terminated for failure to make the payment promptly on May 31, 1962.

We have sketched the material portions of the evidence; and we conclude that the Chancery Court was correct in (a) refusing to declare the forfeiture claimed by Berry; and (b) awarding Crawford specific performance. Berry sought the aid of the Chancery Court to have a forfeiture declared, but he did not come into equity with clean hands. In the first place, the contract specifically provided that Berry would have to make *a demand* on Crawford *after the due date;* and Berry never made any such demand—rather, he sat silently by and sought equity's aid to declare a forfeiture when he himself had not complied with the provisions for forfeiture. In *Williams* v. *Shaver,* 100 Ark. 565, 140 S. W. 740, we

---

[2] Emphasis supplied.

said: "It is well recognized that the right of forfeiture is a harsh remedy and liable to produce great hardships. For this reason it has been uniformly held that before a forfeiture will be declared the law will require that a strict compliance with every important prerequisite must be shown, even in such contracts where forfeiture is provided for by express terms."

Furthermore, by the conversation in the post office, previously mentioned, Berry had led Crawford to believe that Berry would "bring the papers" when Berry wanted his money. Instead, Berry sat mute and claimed a forfeiture. He lulled Crawford into a feeling of security and thereby waived the right to declare a forfeiture without notice, even if the contract had been a mere option contract, which it was not, as previously mentioned. In *Cordell* v. *Enis,* 162 Ark. 41, 257 S. W. 375, we said: "Equity abhors forfeitures and will seize upon slight circumstances indicating a waiver, to avoid or prevent them."

Berry insists that the words in the contract, "time is of the essence," are so strong as to support Berry in his claimed forfeiture; and cites and relies on such cases as *Ind. & Ark. Lbr. Co.* v. *Pharr,* 82 Ark. 573, 102 S. W. 686. As we have previously stated, the rights of Crawford under this contract were more than that of the holder of a mere option; and the case at bar falls within the scope of the language found in *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989:

"Parties may enter into a valid contract relative to the sale of land whereby they may provide that time of payment shall be of the essence of the contract, so that the failure to promptly pay will work a forfeiture, *Ish* v. *Morgan,* 48 Ark. 413; *Quertermous* v. *Hatfield,* 54 Ark. 16; *Block* v. *Smith,* 61 Ark. 266. But the final effect of such an agreement will depend on the actual intention of the parties, as evinced by their acts and conduct; and such a breach of the contract as would work a forfeiture may be waived or acquiesced in. The law will strictly enforce the agreement of the parties as they have made it; but, in order to find out the scope and true effect of

such agreement, it will not only look into the written contract which is evidence of their agreement, but it will also look into their acts and conduct in the carrying out of the agreement, in order to fully determine their true intent. It is a well settled principle that equity abhors a forfeiture, and that it will relieve against a forfeiture when the same has either expressly or by conduct been waived. The following equitable principle formulated by Mr. Pomeroy has been repeatedly approved by this court: 'If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary.' 1 Pomeroy Eq. Jur. 452; *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405; *Morris* v. *Green,* 75 Ark. 410; *Banks* v. *Bowman,* 83 Ark. 425; *Braddock* v. *England,* 87 Ark. 393."[3]

We agree that the Chancery Court was correct in refusing Berry's prayer for a feiture and also in awarding Crawford specific performance. Affirmed.

---

[3] For some more recent cases on "time is of the essence," see: *White* v. *Page,* 216 Ark. 632, 226 S. W. 2d 973; *Moffatt* v. *Wyman,* 222 Ark. 247, 258 S. W. 2d 533; *Vernon* v. *McEntire,* 232 Ark. 741, 339 S. W. 2d 855; and *McClain* v. *Alexander,* 235 Ark. 64, 357 S. W. 2d 1.