Johnny TAYLOR and Joyce Taylor *v.*
EAGLE RIDGE DEVELOPERS, LLC

CA 00-314                                     29 S.W.3d 767

Court of Appeals of Arkansas
Division IV
Opinion delivered October 25, 2000

*Southern & Allen*, by: *Byron S. Southern*, for appellants.

*Giroir, Gregory, Holmes & Hoover, PLC*, by: *John Kooistra, III,* for appellee.

ANDREE LAYTON ROAF, Judge. Johnny and Joyce Taylor appeal the chancellor's grant of specific performance, which required them to sell a parcel of land to appellee Eagle Ridge Developers, LLC ("Eagle Ridge"), under the theory of detrimental reliance/promissory estoppel. The Taylors raise two issues on appeal: the chancellor erred in finding that there was sufficient evidence to grant Eagle Ridge specific performance and the chancellor's findings were unsupported by a preponderance of the evidence. We affirm.

On May 29, 1998, Eagle Ridge and Johnny and Joyce Taylor entered into three separate agreements regarding a single parcel of land owned by the Taylors: the Taylors sold Eagle Ridge a sixty-foot easement for $5000; an Option Agreement, the Taylors granted Eagle Ridge an option to purchase the remainder of the parcel on or before December 1, 1998, for $95,000, approximately forty-one percent of the total proposed purchase price of $233,000; and the Taylors agreed to complete construction of an unfinished house on the parcel. Eagle Ridge initially sought only to purchase the sixty-foot easement. However, the Taylors refused to sell that portion and required that Eagle Ridge purchase the entire parcel, conditioned upon the Taylors' completion of the home.

In October of 1998, Mrs. Taylor contacted Curtis Thomas, a member and manager of Eagle Ridge. Thomas testified that he met with Mrs. Taylor and she told him that the construction on the home would not be completed by December 1, that the house she and her husband were building across the street would not be completed by that time, and that the Taylors would not have a place to live on December 1. Thomas testified that Mrs. Taylor also told him that her husband's business was not doing well and that she also was concerned that if they were required to move, it would require them to take their son out of school, upsetting him. Thomas stated that Mrs. Taylor requested an extension on the option contract from December 1, 1998, until June of 1999, with the Taylors paying $650 in rent from December 1 through the end of June. He stated that he told Mrs. Taylor that Eagle Ridge would do everything they could to help them and he would get back with her. Mrs. Taylor testified and did not contradict Thomas except to say that she did not say her husband had financial problems.

Thomas testified that he called a meeting with his partners and they drew up an extension agreement to accommodate the Taylors until the end of June for a $750-a-month charge. A meeting was held to discuss the terms of the extension on November 4, 1998, with the Taylors, Thomas and Gary Aday, another managing partner. Thomas and Aday testified that Mr. Taylor said that he did not see a problem with the agreement and he was going hunting for a few days and would get back with them after talking to his attorney. Taylor testified that he did not agree to the extension but did not make any objections known, and he said that he would have his attorney look over it. Taylor agreed that he told Eagle Ridge that he would get back with them.

Between November 4 and December 15, Eagle Ridge did not have contact with the Taylors. Thomas testified that he attempted to contact the Taylors numerous times, but they would not return his messages. Mr. Taylor testified he received a message on November 29, 1998, but that he did not return the call. He stated that he did not agree with the terms of the extension agreement, he never agreed to the extension at the November meeting and he thought that Eagle Ridge had decided to not exercise their option.

Thomas testified that he drove to the Taylors' home on December 15, 1998. Taylor came outside and Thomas told him they needed to complete the agreement. Thomas testified that Taylor stated that there was nothing to complete as Eagle Ridge had not exercised its option by December 1, 1998. On December 23, 1998, Eagle Ridge mailed the Taylors a letter stating that it was exercising the option to purchase the property.

On January 12, 1999, Eagle Ridge filed a cause of action in the Chancery Court of Pulaski County alleging fraud, detrimental reliance/promissory estoppel, and breach of the construction agreement. A trial was held on October 6, 1999. At the conclusion of trial, the chancellor ruled that Eagle Ridge was entitled to a decree of specific performance under the theory of promissory estoppel/ detrimental reliance. The Taylors appeal, arguing that the chancellor erred in finding that there was sufficient evidence to grant Eagle Ridge specific performance and that the chancellor's findings were unsupported by a preponderance of the evidence.

■ The Taylors' first argument is that the chancellor erred in finding there was sufficient evidence to grant specific performance. The chancellor concluded that sufficient evidence existed to show that Eagle Ridge relied on the Taylors' representations and conduct and that the Taylors should be estopped from asserting expiration of the option contract. Chancery cases are reviewed *de novo* on appeal; however, we will not reverse a chancellor's findings of fact unless they are clearly erroneous. *McNamara* v. *Bohn*, 69 Ark. App. 337, 13 S.W.3d 185 (2000).

■ ■ In reviewing the law of promissory estoppel, our supreme court has held that a promise that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and that does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise; the remedy granted for breach may be limited as justice requires. *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996) (quoting *Restatement (Second) of Contracts* § 90 (1981)). The general rule is that claims of promissory estoppel are questions for the fact-finder. *See Country Corner Food & Drug, Inc. v. Reiss*, 22 Ark. App. 222, 737 S.W.2d 672 (1987); *Dickson v. Delhi Seed Co.*, 26 Ark. App. 83, 760 S.W.2d 382 (1988). The party claiming estoppel must prove he relied in good faith on the wrongful conduct and has changed his position to his detriment. *Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993). Whether there was actual reliance by appellants and whether it was reasonable is also a question for the trier of fact. *Van Dyke, supra.*

■ ■ The chancellor found that negotiations were instigated by Mrs. Taylor and that Eagle Ridge detrimentally relied on statements made by Mr. and Mrs. Taylor, specifically, Mr. Taylor's statement that he would get back with them on the extension agreement. The chancellor also found that Mr. Taylor knew Eagle Ridge was relying on him regarding that representation. She found that the Taylors did not take any affirmative action at the time of the meeting to voice any objections to the extension agreement that they requested. Partners for Eagle Ridge testified that Mr. Taylor specifically said the extension looked good to him; however, Mr. Taylor refuted that statement. Conflicts in testimony are resolved by the trier of fact. *Argo v. Buck*, 59 Ark. App. 182, 954 S.W.2d 949 (1997). Here, the chancellor exercised her judgment and resolved the conflict in favor of Eagle Ridge. Such resolution

was particularly justifiable in light of the chancellor's finding that Mr. Taylor was "a pretty incredible witness regarding some of his testimony on what happened." Based on the evidence presented and the chancellor's superior opportunity to assess the witnesses, we cannot say that the chancellor's finding of detrimental reliance on the part of Eagle Ridge was clearly erroneous or clearly against the preponderance of the evidence.

■ ■ The granting of specific performance was appropriate relief under the circumstances as the contract involved the sale of land. Where land or any estate or interest in land is the subject of an agreement, the right to specific performance is absolute. *Stacy v. Lin*, 34 Ark. App. 97, 806 S.W.2d 15 (1991). Whether the court should have ordered specific performance of the sale of the land is a question of fact for the chancellor and this decision under the current facts was not clearly erroneous. *Stacy, supra.* Therefore, sufficient evidence exists to support the chancellor's granting of specific performance.

Next, the Taylors argue that the chancellor's findings were not supported by the preponderance of the evidence. In support of this argument, the Taylors assert that because the contract at issue was for an option to purchase land, any modification must be in writing to comply with the Statute of Frauds. They also argue that an option contract is distinguishable from a land sale contract and this distinction requires a finding that Eagle Ridge forfeited the consideration paid for the option upon its expiration December 1, 1998.

■ ■ The chancellor found sufficient facts to support detrimental reliance and specifically found that the Taylors waived their right to a forfeiture on December 1 by requesting an extension on the option agreement and then not getting back with Eagle Ridge, knowing that Eagle Ridge was awaiting their response. It is unquestioned that "[e]quity abhors a forfeiture and will seize upon slight circumstances indicating a waiver to avoid or prevent them." *Berry v. Crawford*, 237 Ark. 380, 373 S.W.2d 129 (1963). Although the option contract contained language that time was of the essence, the final effect of the agreement depended on the actual intent of the parties, as evidenced by their acts and conduct. *Id.* Here, the chancellor had before her not simply an option contract, but a series of agreements that clearly evidenced the Taylors' intent

to sell the property and Eagle Ridge's intent to purchase it for $223,000, conditioned upon completion of the unfinished home, and by Eagle Ridge's payment of $95,000 towards this purchase price. Under these circumstances, the Taylors' request for an extension on the contract and representation to Eagle Ridge that they would get back with them resulted in the waiver of their right to forfeiture. Indeed, the chancellor, in reaching her ruling, clearly considered the construction agreement in addition to the option, stating: "This is a court of equity. They [Eagle Ridge] didn't throw away their $95,000. They were relying on the representations made by the Taylors and in attempting to make their [the Taylors'] life a little more easy."

In regards to the statute-of-frauds argument, our supreme court has held that where one has acted to his detriment solely in reliance on an oral agreement, estoppel may be raised to defeat the defense of the statute of frauds. *Van Dyke, supra.* Therefore, this argument has no merit. Likewise the option/contract distinction has no bearing on the outcome of this case. Our supreme court has further held that a party may waive his right to declare a forfeiture of a contract for sale of land without notice, or even if the contract had been an option contract. *Berry, supra.* As previously discussed, the chancellor's finding of detrimental reliance was supported by a preponderance of the evidence. A party who induces another to engage in conduct or dealings he would not have entered into but for such misleading will not be allowed, because of estoppel, to afterward assert his right to the detriment of the person so misled. *Ramsey, supra.* We affirm.

Affirmed.

JENNINGS and CRABTREE, JJ., agree.