## TURPIN *v.* BEACH.

### Opinion delivered January 11, 1909.

1. SALE OF LAND—FORFEITURE—WAIVER.—Where land was sold partly for cash and partly on credit, and several notes were taken for the unpaid money, payable at intervals, and stipulating that upon the first or any subsequent default made in the payments all of the notes remaining unpaid shall at once become due and payable, and that the vendor may surrender them at any time after 30 days, and the obligation resting on him shall become null and void, a forfeiture by reason of nonpayment of the notes at maturity was waived by the vendor accepting payment of certain of the notes after maturity and waiting until third persons have purchased the land from the vendee before seeking to enforce the forfeiture. (Page 608.)

2. SAME—MODE OF DECLARING FORFEITURE.—Where a contract of sale of land stipulated that, upon default in payment of any of the negotiable notes given for the purchase money, the vendor may declare forfeiture and surrender the unpaid notes whereupon his obligation should become null and void, an attempt by the vendor to declare a forfeiture by offering to surrender the unpaid notes, some of which were not yet due, upon the vendee's surrender of the contract was insufficient. (Page 608.)

3. APPEAL AND ERROR—BRINGING OF EVIDENCE—PRESUMPTION.—The decree appealed from recites that the cause was submitted upon the pleadings, the depositions of three witnesses, *and other evidence.* The clerk certifies that the transcript contains all the pleadings, papers, files, etc., in the action. Certain exhibits were attached to the depositions. *Held,* that it will be presumed that these exhibits constituted the "other evidence" mentioned in the recitals of the decree. (Page 608.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

### STATEMENT BY THE COURT.

On the 1st day of February, 1904, L. B. Beach entered into a written contract with Willis Guinn, a negro, to convey to him the real estate involved in this controversy. The consideration named in the contract was $550. The contract recites that $25 of it were paid in cash, and that notes bearing the same date as the instrument were executed for the deferred payments. They were negotiable and payable to the order of L. B. Beach as follows: $30 due March 28, 1904, and thirty dollars every three months thereafter until $510 are paid and one other note for $15 due June 28, 1908. The agreement stipulates that, upon the payment of the purchase money, a deed will be executed to the purchaser, and that upon the first or any subsequent default made in said payments all of said notes remaining unpaid shall at once become due and payable, and that Beach may surrender them at any time after 30 days, and the obligation resting on him shall become null and void, and that the money theretofore paid by Guinn on account of said purchase shall be considered as so much rent paid by Guinn for the use of the property from the date of the contract. Guinn went into possession of the property, but did not meet all his payments as they fell due. L. B. Beach was the daughter of A. D. Beach, and he acted as her agent in the whole transaction. He says that Guinn never made any of the payments when the notes fell due except the first one. Thereafter the payments were made at irregular intervals. Five of the notes of $30 each have been paid, and an indorsement of $14 paid on the sixth note. Guinn kept making excuses for his delay in making payments which Beach accepted and received each payment as it was made. Guinn went to see Beach about his deferred payments in November, 1906. Beach said that he owed him more than he thought he ought to, and told him that had forfeited his rights. He agreed with Guinn that if he would pay the balance of the purchase money by the 1st day of December he would execute him a deed to the land. He gave Guinn a memorandum showing the total amount to be due as $465. On the 8th day of December, 1906, Beach wrote to Guinn the following letter:

"Mr. Willis Guinn,

"31st and Cumberland Sts.,

"Little Rock.

"Dear Sir: I hereby give you notice that the contract between L. B. Beach and yourself, dated February 1, 1904, is hereby declared cancelled and void, in accordance with the terms and provisions therein, and I hereby demand immediate possession of the real estate therein described. All of your unpaid notes will be cancelled and delivered to you on surrender of your copy of said contract, properly assigned to me.

"Very truly yours,

(Signed) "L. B. Beach,

"By A. D. Beach, Agent."

On the contract appears the following assignment: "I hereby assign all my right, title and interest in and to the written contract to Yates & Turpin, agents, for and in consideration of one hundred dollars cash in hand paid by said Yates & Turpin, which I hereby acknowledge. December 11, 1906."

(Signed "Willis Guinn."

Thus far there is no controversy about the facts.

Turpin testified that the agreement for the assignment was made several days before this writing was executed. That he paid Guinn $15 at the time. That he then went to see Beach, and demanded a deed. That Beach refused to execute the deed, although the purchase money was tendered to him. That $85 was paid to Guinn when the written assignment was executed.

Beach testified that he refused to make the deed as requested by Turpin. That he told him Guinn had no rights in the contract, and he had better not put any money into it. That Turpin said as he was going out, "Well, I have not put any money in it yet." Turpin denies this.

Beach further testified:

"Q. (By the court): Was that before or after you had written this letter (referring to the letter of December 8, 1906)? A. My impression is that it was the same day I had written the letter."

Again the following appears in his testimony:

"Q. You told him (Guinn) that he had forfeited his right, and you would have to eject him, and wrote him this letter all

before you knew about the interest Yates & Turpin claimed in it, or knew he was dealing with them?

"A. I am not sure about that. I don't know whether my conversation with Turpin was before or after this, but my recollection is that it was the same day. Of course, I knew that they had been talking with him, but I thought they would not make any deal with him after I had talked with them, and was surprised when I heard they had."

The chancellor denied appellants the right of specific performance and rendered a decree dismissing the complaint for want of equity; and the case is here on appeal.

*I. S. Humbert* and *Malloy & Danaher,* for appellants.

Courts of equity abhor forfeitures; and, when the contract will admit of a construction that will prevent it, refuse to declare a forfeiture. 59 Ark. 408; 77 *Id.* 168; *Id.* 307. Beach waived a forfeiture. 75 Ark. 414; 59 *Id.* 405; 83 *Id.* 553. Failure to pay the purchase money according to the agreement will not authorize the vendor to institute suit to rescind the contract. 12 L. R. A. 243; 38 Tex. 139; 27 Miss. 498; 65 Ill. 42; 2 Warvell on Vendors & Pur. 849-880; 21 Ill. 619. The unpaid negotiable note must always be returned or cancelled before a forfeiture can be declared. 47 Ill. 243. Before the vendor can rescind, he must place himself where he cannot enforce the contract against the vendee. 21 Ill. 236. Time is not of the essence of the contract, and notice to quit not a sufficient declaration of an intention to declare a forfeiture. 97 Mich. 412; 89 Ala. 405. It would be unconscionable to permit the vendor to keep both the money and the property. 91 N. Y. App. 400. And if there had been a forfeiture, equity will relieve against it. 59 Ark. 405. A forfeiture is waived by extending time for payment. 49 Mich. 56; 74 Hun, 256.

*Frank H. Dodge* and *J. H. Carmichael,* for appellee.

The case should be affirmed on the authority of *Braddock* v. *England,* 87 Ark. 393. Granting specific performance is always discretionary with the court. Eaton on Equity, 529; Pomeroy's Equity, (Student's Ed.) sec. 1404; Pomeroy's Eq. Vol. 6. sec. 762. A chancellor's finding of fact will not be set aside unless against the clear preponderance of the evidence. 68 Ark. 314;

71 *Id.* 605; 68 *Id.* 134; 73 *Id.* 489; 67 *Id.* 200; 75 *Id.* 52; 85 *Id.* 83. Where the record shows that it does not contain all the evidence, it will be presumed that the evidence was sufficient to sustain the finding and decree of the chancellor. 80 Ark. 79; 77 *Id.* 195; 63 *Id.* 513; 45 *Id.* 240; *Id.* 304; 58 *Id.* 134. It is too late after expiration of the term to cure the defect by order *nunc pro tunc.* 45 Ark. 240.

HART, J., (after stating the facts.) We think the decree of the chancellor was erroneous, and that it would be inequitable to declare a forfeiture under the facts disclosed in the record. *Braddock* v. *England,* 87 Ark. 393, and cases cited. Besides, the unpaid notes were negotiable, and some of them not yet due, and the contract contemplates a surrender of the notes if a forfeiture is declared. In his letter to Guinn, Beach only offers to cancel and deliver the notes to him on Guinn's surrendering his copy of the contract properly assigned. The notes were never cancelled or surrendered to Guinn. See *Staley* v. *Murphy,* 47 Ill. 243.

Counsel for appellees claim that the record shows that it does not contain all the evidence, and in support of their contention cite the case of *Hardie* v. *Bissell,* 80 Ark. 79. In that case, RIDDICK, J., speaking for the court, said:

"We have to look to the record alone; and as the record recites that tax receipts and also the record of tax receipts were read in evidence, and as these are not found in the transcript here, we must presume that the chancery court had before it evidence which the transcript does not contain." To the same effect, see *Matlock* v. *Stone,* 77 Ark. 199 and *East* v. *Key,* 84 Ark. 429.

So, too, in the case of *White* v. *Smith,* 63 Ark. 513, which was an appeal from the Pope Circuit Court in chancery, RIDDICK, J. said: "We are of the opinion that the decree of the circuit court should be affirmed. The record shows that the case was heard partly on evidence taken orally at the bar of the court, and this oral evidence was not reduced to writing or preserved by bill of exceptions, and is not contained in the transcript upon which the case was submitted for decision here."

The above decisions are based upon the fact that the record did not show the evidence upon which the decree was based, and for that reason this court could not tell whether or not the

cause was correctly decided in the chancery court. In such cases the presumption is that the omitted evidence was sufficient to sustain the decree of the chancellor.

In the case of *Lenon* v. *Brodie,* 81 Ark. 208, the decree, after reciting in part upon what the cause was heard, continuing, said: "The depositions of witnesses [were] taken *ore tenus* at the bar of the court, and agreed to be filed and used as depositions in the case." The certificate of the clerk to the transcript was in the same language as the certificate in the present case. The court held that it was sufficient to show the evidence upon which the case was heard. The rule is that the transcript must show all the evidence upon which the cause is heard, and, if there is any conflict between the certificate of the clerk to the transcript and the recitals of the decree in that respect, the latter governs.

The decree in the present case recites that the cause was submitted "upon the complaint and amended complaint of plaintiffs, the answer of the defendant, and the depositions of A. D. Beach, J. E. Turpin and T. G. Malloy, and other evidence." The clerk of the chancery court certifies that "the annexed and foregoing 52 pages of within typewritten matter contains a true, correct and compared transcript of all the pleadings, papers, files and entries of proceedings in the action styled in the caption, as hath appeared by comparing the same with the originals thereof now on file and of record in my office." The original contract, the notes marked paid and the letter of date of December 8, 1906, from A. D. Beach to Willis Guinn are included in the transcript, and are referred to and made exhibits to the depositions. These instruments of writing are independent evidence. The object of the witness referring to the exhibits is to prove them to be what they purport to be, and the provision of the statute requiring exhibits to be attached to the deposition, etc., was only intended for greater certainty and security in proving them. *Atkins* v. *Guice,* 21 Ark. 174; *Nick's Heirs* v. *Rector,* 4 Ark. 276. We must indulge the presumption that the "other evidence" mentioned in the recitals of the decree is these instruments of writing referred to in the depositions as exhibits. They are contained in the transcript and certified by the clerk as having been introduced in evidence,

and this is not contradicted by the recitals of the decree. Hence we conclude that it is sufficiently shown that the transcript contains all the evidence upon which the cause was heard.

Therefore, the decree of the chancellor is reversed, and the cause remanded with directions to enter a decree for specific performance upon the payment of the balance of the purchase money in accordance with the prayer of the complaint.