## MASSEY v. KISSIRE.

## Opinion delivered June 13, 1921.

1. ` DEEDS—INCAPACITY OF GRANTOR.—A deed and contract conveying all of his property, real and personal, executed by a father, who had recently suffered a paralytic stroke, to one of his sons for a nominal consideration named and the son's agreement to support the father during his life and to give the other two sons such part of the property as the grantee wished *held* invalid as executed by the father while incapable of transacting business.

2. APPEAL AND ERROR—APPELLANT'S ABSTRACT, WHEN CURED.—Rule 9, requiring appellants to abstract the pleadings, is intended to get the issues presented before the Supreme Court, and this purpose is accomplished where appellee supplied all the evidence omitted from appellant's abstract necessary to enable the court to determine the case upon the merits.

3. APPEAL AND ERROR—OMITTED EVIDENCE NOT SHOWN BY AFFIDAVITS. —Affidavits are inadmissible on appeal to show that evidence heard at the trial was omitted from the transcript.

4. APPEAL AND ERROR—PRESUMPTION AS TO TRANSCRIPT.—A transcript filed in a case in the Supreme Court will be presumed to be a true and perfect copy of the record, if properly certified by the clerk.

5. APPEAL AND ERROR—SUFFICIENCY OF CERTIFICATE TO TRANSCRIPT.— The clerk's certificate to a transcript in a chancery case on appeal to the Supreme Court that it contains all the testimony on file in the clerk's office was complete and sufficient, unless there was a conflict between the certificate and the decree.

6. APPEAL AND ERROR — DECREE CONFLICTING WITH CERTIFICATE.— Where there is a conflict between the decree of the court and the certificate of the clerk as to the evidence upon which the cause was heard, the decree will control.

7. APPEAL AND ERROR—CONFLICT BETWEEN DECREE AND CERTIFICATE.— There is no conflict between a decree reciting that the case was heard upon the "proofs" and the clerk's certificate to the transcript certifying that it contained all the testimony on file in his office.

8. APPEAL AND ERROR—PROCEDURE WHERE TRANSCRIPT INCOMPLETE.— Where a transcript is complete on its face, if oral evidence was heard in the trial and not incorporated in the transcript, appellee was privileged to suggest a diminution of the record and to request time to obtain a *nunc pro tunc* order showing that oral evidence was heard, not in the transcript, whereupon he would

be entitled to an affirmance unless appellant brought the oral evidence into the record.

Appeal from Conway Chancery Court; *Jordan Sellers,* Chancellor; reversed.

*J. W. Johnston,* for appellant.

The decree is contrary to the weight of the evidence. H. C. Kissire, the father, was insane and mentally incapable of making the contract and deed, and there was fraud and wrongful intention on part of appellee. There were confidential relations between appellee and his father, and undue influence was used such as to avoid the contract and deed, and both should be canceled. 40 Ark. 28; 102 *Id.* 232; 9 Cyc. 456; 161 S. W. 532; 69 L. R. A. 393; 86 N. E. 568; 26 Ark. 604; 15 *Id.* 555; 123 *Id.* 134.

*J. Allen Eades,* for appellee.

Independent advice is not necessary to the validity of a deed in this State. 128 Ark. 143. Old age, physical infirmity and partial eclipse of the mind does not prevent one from making a valid will or deed, if the party knew and understood what he was doing and comprehended his acts. 49 Ark. 472. The presumption is that the father was sane when he made the transfer, and the burden was on appellant to show insanity. 70 Ark. 166. The chancellor's finding is sustained by a clear preponderance of the testimony.

HUMPHREYS, J. On the 10th day of March, 1920, appellee, H. L. Kissire, instituted suit in the Conway Chancery Court to compel the Citizens' Bank of Morrilton to cash a check for $3,578.49, drawn in his favor by his father, H. C. Kissire, against his father's checking account in said bank.

The Citizens' Bank of Morrilton interposed the defense that H. C. Kissire was insane, and, on that account, incapacitated to issue the check.

On the 19th day of April, 1920, appellant, W. O. Massey, the duly appointed guardian of H. C. Kissire, instituted suit against the appellee, H. L. Kissire, in the same court, to cancel a contract and deed of date February 24, 1920, purporting to have been executed by

H. C. Kissire to H. L. Kissire, transferring and convey-
ing all his personal property and real estate, upon the
ground that H. C. Kissire was insane at the time the con-
tract and deed were executed.

Appellee, H. L. Kissire, filed an answer, admitting
the execution of the instruments, and alleging that, at the
time of the execution of them, his father, H. C. Kissire,
was of sound mind.

The causes were consolidated and submitted to the
court upon the pleadings and evidence, which resulted in
a decree sustaining the validity of the contract and deed,
and vesting all the property, both personal and real, of
H. C. Kissire in H. L. Kissire, from which decree is this
appeal.

The record reflects that H. C. Kissire was stricken
in the late summer or early fall of 1919 with paralysis;
that he never transacted any business after that time ex-
cept to execute the contract and deed on February 24,
1920, transferring all his property to his son, H. L. Kis-
sire, and to sign his name in order to cash a stamp at the
postoffice. The deed in question conveyed lots 1, 2 and
3, in block 8, Brown's Addition to the town of Morrilton,
Arkansas, which constituted H. C. Kissire's home, to his
son, H. L. Kissire, for a recited consideration of $25 in
cash, support for the balance of his life, and love and
affection. The contract, in substance, transferred all the
personal property of H. C. Kissire to his son, H. L. Kis-
sire, consisting of a bank account of $3,578.49, $700 in
bonds and stamps, and a few other items of personal
property, for a recited consideration of love and affec-
tion, $25 in cash, and support and burial expenses, and
such assistance as H. L. Kissire might desire to render
his other two sons, Oliver and Melvin, and to furnish
Oliver and Melvin a home as long as they conducted
themselves in a manly way and were not abusive to H. L.
Kissire or his wife. The contract contained a proviso
to the effect that, should H. L. Kissire fail to furnish
H. C. Kissire support, or fail to render assistance to
Oliver and Melvin as agreed upon, such failure should

abrogate the contract, in which event the cash consideration of $25 should be paid back and such property as was remaining turned back to H. C. Kissire, except the lands conveyed by deed. H. L. Kissire was thirty-four years of age and almost blind, and resided in the home of H. C. Kissire, with the other two sons who were also blind at the time the instruments aforesaid were executed.

On behalf of appellant, T. J. Kissire, a brother of H. C. Kissire, W. O. Massey, the duly appointed guardian of H. C. Kissire, Mrs. Addie Crook, a neighbor, and M. H. Dean, county and probate judge of said county, testified that H. C. Kissire was mentally incapacitated to transact business at the time he executed the contract and deed. T. J. Kissire stated that he had visited H. C. Kissire frequently after he suffered the paralytic stroke until the early days of March, 1920; that his mental and physical condition was ''pretty sorry,'' and that, during the entire period, he was incapable of transacting business; that he was incapable of understanding the nature of a contract or a conveyance of any kind. Mrs. Addie Crook stated that she had seen him, during the period he had lived near her, from one to three times a day; that she had heard him talk, and was of the opinion that he was unfit to transact business of any kind during the entire time. W. O. Massey testified that H. C. Kissire had not been able to transact any business since his misfortune in the late summer of 1919; that he came to the bank the latter part of August, 1920, in company with his son and W. J. King. The following interrogatory and answer appears in the evidence of W. O. Massey:

''Q. What did he say to you at that time, if anything, about his business at the bank?''

''A. He came into the bank and said he come to see about his business. Wanted to see about $116 worth of cotton. I asked him about it, and he kept talking about cotton, and I told him we had no record of a deposit of that kind, and I asked his son what the old man meant by it, and he said he did not know, and the old man said something about coming to the Bank of Morrilton to see

about his account, and I told him I had been over there and looked after that, that his account was square with the Bank of Morrilton, but they had $100 bond over there, and I got the bond and had it put away for him. Then his mind flashed a little bit, and he said something about the boys had pretended to take care of him, and stood awhile and did not say anything more for a few minutes. I went and got his account and told him the amount he had on deposit, and also told him that the interest due on his account at that time would amount to about $150, but he did not seem to realize the amount he had to his credit. His mind seemed to be on, and he kept asking about, some cotton, $116 worth of cotton. Then he turned around and went out and said, 'Take care of my money until I call for it.' That was all."

Judge M. H. Dean testified that he saw H. C. Kissire often during the fall of 1919, and later visited him at his home and tried to engage him in conversation; that he became convinced, from his visits and conversations, that H. C. Kissire was not capable of transacting business or protecting his interests; that he saw him during the latter part of January and through February, 1920, and found him wholly incapable of transacting business; that, on March 12, 1920, H. C. Kissire's mind was a blank on what one might ask him; that, on one occasion, in February, he tried to talk with him on business matters; that he could not talk intelligently, and denied that he owned his home upon which he was residing at the time, and which belonged to him.

On behalf of appellee, he, Oliver Kissire, Melvin Kissire, Oma Kissire and J. A. Eades, who prepared the contract and deed and took the acknowledgment of H. C. Kissire to the deed and the acknowledgments of both of the parties to the contract, all testified that the contents of the instruments were suggested by H. C. Kissire himself, and that his mind was clear and mental condition good at the time he executed the instruments; that he understood the nature and effect of both instruments. H. L. Kissire, in describing the general condition of his

father's mind, said that "part of the time he talked with good sense, and part rambling." He said, however, that, on the day he executed the instruments, his mind was clear.

After a careful reading and consideration of the evidence, we are convinced that H. C. Kissire was not capable of comprehending the nature and effect of the contract and deed executed by him to his son on the 24th day of February, 1920. The son, to whom he conveyed the property, was almost blind. The provision made for his two younger sons, who were blind and in a way helpless, was dependent in a large measure upon the will of H. L. Kissire and his wife. Considering the condition of himself, that of his two younger sons, as well as the affliction of the son to whom he conveyed all the property, the contract, in its very nature, was an improvident one. When the nature of the contract is considered in the light of the evidence of disinterested witnesses, who had ample opportunity to judge of the mental capacity of H. C. Kissire from association and conversation, we think the great weight or preponderance of the evidence supports the view that H. C. Kissire was incapable of transacting business when he executed the deed and contract in question. The chancellor's finding was contrary to the weight of the evidence, and, for that reason, the decree is reversed and the cause remanded with instructions to cancel the contract and deed.

HART, J. (dissenting). It seems to me that the case of *Turpin* v. *Beach*, 88 Ark. 604, is against rather than in favor of the majority opinion. In that case the decree recited that the case was heard upon the pleadings and the depositions of three named witnesses and other evidence. The clerk certified that the transcript contained a true and compared transcript of all the pleadings, papers, files and entries of proceedings in the action. There were certain exhibits which had not been attached to the depositions as required by statute. The court said that the statute intended greater certainty in proving the exhibits which were held to be independent

evidence, and that the words, "other evidence," should be taken to refer to them. This is an application to the well known doctrine of *ejusdem generis*. The record recites that the case was heard on the depositions and other evidence, meaning other evidence of like character.

In the present case the record recites that it was heard upon the pleadings and proof. The word "proof" is broad enough to include oral as well as written evidence. The certificate of the clerk is that the "foregoing record contains all testimony on file in my office in the case." There is nothing to indicate that the oral testimony was ordered to be reduced to writing and filed. The clerk is careful to certify that the transcript only contains the testimony on file. If oral testimony was heard, it would not be on file and therefore is not included in the transcript.

Counsel for appellee called our attention to this matter before the case was heard and asserted that the case was heard partly on oral evidence. I think that the burden was on appellant to correct the record, so as to show that the case was not heard on oral evidence, if that was a fact. The affidavits introduced by appellee were not introduced to contradict the record or to correct it here. They were introduced merely to show good faith on the part of appellee. They have not been controverted, and so it seems certain then that the case was heard partly on oral evidence. If such was the case. I think the ends of justice would have been better served by allowing a correction of it to have been made in the chancery court, and that the hearing of the case should have been continued in this court until there was an opportunity to apply for a correction of the record in the court below so as to make it speak definitely on the question of whether the case was heard partly on oral evidence. If the court thought it was the duty of appellee to do this, it should have so declared and have given him an opportunity to do so. This is especially true when we take into consideration that appellee had a finding of fact in his favor by the chancellor. Family ar-

rangements are favorites of the law and should not be disturbed when fairly made. In *Pate* v. *Johnson,* 15 Ark. 275, the court said that amicable and family settlements are to be encouraged, and, when fairly made, strong reasons must exist to warrant interference on the part of a court of equity. This doctrine was applied in a much later case where there was a conveyance made by a daughter to the father which the court said was not a donation to the father, nor, strictly speaking, a sale and purchase, but was more in the nature of a family settlement. *Giers* v. *Hudson,* 102 Ark. 232.

In the case at bar all the parties concerned were practically blind except appellee, and he was partly so, The family seem to have had that sensitiveness peculiar to blind people and wished to seclude themselves from the world and to live together as one family. The deed was executed pursuant to this family agreeement, and all the family wished it to stand. It may be that the omitted evidence would have abundantly established the correctness of the finding of the chancellor, and I think that the opportunity should have at least been given appellee to make application in the court below to amend the record so as to show with certainty that the case was heard partly on oral evidence.

Therefore, I respectfully dissent.

HUMPHREYS, J. (on rehearing). Our attention is again called to the fact that we took no notice in the original opinion of the suggestion of appellee that appellant had not complied with rule 9 in reference to abstracting the pleadings. It is urgently insisted that appellee is entitled to an affirmance of the decree of the chancery court because appellant failed to abstract any of the pleadings, in keeping with the rule, and omitted entirely to abstract appellee's answer and demurrer to appellant's bill. The purpose of the rule invoked is to get the issues presented in the trial court clearly before this court. This purpose was accomplished by appellee supplying all the evidence necessary, omitted from appellant's abstract, to place the case fairly before this

court. The reason we did not refer in the original opinion to this insistence of appellee was because it was stated by appellee that he would "make such additional abstract of the testimony as will place the case fairly before the court." Appellee did this in such way that the real issue in the case became apparent and enabled this court, with the issue thus defined, to determine the case upon its merits.

Appellee suggested in his original brief that the transcript did not contain all the evidence heard by the trial court, and insisted then, and strenuously insists now, that he was entitled to an affirmance of the decree under the well-known presumption that the evidence omitted was sufficient to sustain the decree. On motion for rehearing, appellee supports his suggestion that evidence heard in the trial was omitted from the transcript by filing affidavits to that effect. These affidavits add nothing to the original suggestion, because incorrect or incomplete transcripts can not be corrected by affidavit. *Memphis Land & Timber Co.* v. *Bd. Dir. of St. Francis Levee Dist.,* 70 Ark. 409. The presumption must be indulged that a transcript of a case filed in this court contains a true and perfect copy of the record, if properly certified by the clerk. Upon the suggestion that the record in this case was incomplete, we examined the certificate of the clerk and the decree of the court. That part of the clerk's certificate relating to the evidence incorporated in the transcript is that the "foregoing record contains all testimony on file in my office, in the cases," properly styling them. The contention is made that the certificate is insufficient because it says that the evidence on file in the clerk's office is the evidence incorporated in the transcript. This is the only evidence that could be incorporated in the transcript. It would be improper to incorporate in the transcript evidence not appearing in the record of the case. This certificate is therefore complete, unless there was a conflict between the certificate and the decree of the court. Certificates in substan-

tial conformity with this certificate were held to be complete in the cases of *Turpin* v. *Beach,* 88 Ark. 604, and *Kampman* v. *Kampman,* 98 Ark. 328. This court is committed to the doctrine that where there is a conflict between the decree of the court and the certificate of the clerk, as to the evidence upon which the case was heard, the decree will control. *Weaver-Dowdy Co.* v. *Brewer,* 129 Ark. 193. In the instant case, the decree of the court recites that the case was heard upon the "proofs." The proofs upon which the case was heard, according to the decree, may have been the identical proofs incorporated in the transcript and certified by the clerk. There is not necessarily any conflict between the decree of the court and the certificate of the clerk, so the transcript on its face is complete. This court ruled, in case of *Turpin* v. *Beach, supra,* that, where the decree recited that the cause was heard upon "the depositions of three witnesses, and other evidence," and no other evidence appeared in the transcript except exhibits that were attached to the three depositions, no conflict existed between the decree of the court and the certificate of the clerk, for the reason that the words, "and other evidence," could be construed as relating to the exhibits.

As the transcript in this case on its face is complete, and oral evidence was heard in the trial court, not incorporated in the transcript, appellee was privileged to suggest a diminution of the record and to request time to obtain a *nunc pro tunc* order showing that the case was heard upon oral evidence not incorporated in the transcript. After obtaining a correction of the record to that effect, then he would have been entitled to an affirmance of the decree, unless appellant, upon request, had been able to complete the record by bringing the oral evidence into the transcript by proper proceedings.

After a thorough consideration of the other grounds suggested in the motion for rehearing, we adhere to the conclusions reached as announced in the former opinion.

Mr. Justice HART dissents.